**STATE of Tennessee, Appellee,**

v.

**Jessie L. JONES, Appellant.**

**No. 969.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Jan. 30, 1987.

Permission to Appeal Denied by Supreme Court April 13, 1987.

A. Christian Lanier, III, Attorney at Law (At Habitual Criminal phase and on appeal only), Chattanooga, Rodney C. Strong, Attorney at Law, (At trial of the Underlying Offense only), Chattanooga, for appellant.

W.J. Michael Cody, Atty. Gen., Nashville, Robert Conley, Asst. Atty. Gen., Nashville, Gary Gerbitz, Dist. Atty. Gen., Chattanooga, Lawrence E. Young, Frank M. Groves, Jr., Jerry S. Sloan, Asst. Dist. Attys. Gen., Chattanooga, for appellee.

OPINION

SCOTT, Judge.

The appellant was convicted of robbery by the use of a deadly weapon and aggravated assault with a firearm, causing bodily injury. He was also found to be an habitual criminal and each of his sentences was enhanced to life imprisonment. On appeal he has presented nine issues, one of which challenges the sufficiency of the convicting evidence.

On April 29, 1983, Charlie Howard Broxton was the manager of the Tanana Oil Service Station at 5408 Ringgold Road in Chattanooga. At approximately 2:00 P.M., he was preparing his bank deposit, having in excess of $6,750.00 to be deposited. At about 2:10 P.M. he left his office and went to the gas pumps to check a discrepancy in his figures. As he returned to the office, the appellant walked past him, pushed the office door open, pulled a gun from a paper bag and said that it was a stick up. A struggle ensued as Mr. Broxton tried to take the gun from the appellant. He struck Mr. Broxton in the head, rendering him momentarily unconscious. As he did so, the gun fired, but no one was hit by the bullet.

Jerry Waters and Allen Lee Cooper operated a dental laboratory next door to the service station. Messrs. Waters and Cooper watched the appellant loitering between their office and the service station for a long period of time. Mr. Waters watched him for fifteen to twenty minutes from the office window, believing that something was about to happen. Mr. Cooper described the appellant's suspicious behavior as he sat behind the ice machine and cold drink machine. Periodically, the appellant peeked around the machines looking

toward the gas station. In addition, Mr. Broxton had seen the appellant around the station three or four times earlier that month.

Upon hearing the shot, Messrs. Waters and Cooper responded. Mr. Waters went to the gas station to check on Mr. Broxton. As Mr. Cooper came out the door of their business the appellant passed within four or five feet of him. Mr. Cooper followed the appellant, who left the scene in a U–Haul truck being driven by someone else. As Mr. Cooper attempted to follow the truck in his car, a woman in a white Trans-Am repeatedly blocked him to keep him from getting close to the truck. Eventually, he saw the appellant and another man jump out of the truck when it slowed. They started walking, but upon turning and seeing Mr. Cooper, they ran.

Mr. Broxton identified the appellant from an array of five or six photographs. Messrs. Waters and Cooper identified the appellant at a corporal line-up.

The appellant presented seven witnesses to establish his alibi that he was at home with his family that afternoon. The witnesses included his two teenage sons, his cousin, his sister and three friends. He also presented evidence to contradict some of the testimony given by the prosecution witnesses.

By its verdict, the jury obviously rejected the alibi defense and accredited the testimony of the state's witnesses.

The effect of an alibi depends upon the credibility of the supporting witnesses and the determination of their credibility and the weight to be given to their testimony are questions of fact for the jury. *Turner v. State*, 187 Tenn. 309, 213 S.W.2d 281, 283 (1948).

A jury verdict of guilty, approved by the trial judge, accredits the testimony of the state's witnesses and resolves all conflicts in favor of the theory of the state. *State v. Hatchett*, 560 S.W.2d 627, 630 (Tenn. 1978). On appeal the state is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom.

*State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn.1978).

There was ample, indeed overwhelming, evidence from which any rational trier of fact could conclude that the appellant was guilty of robbery by the use of a deadly weapon and aggravated assault by the use of a firearm, resulting in bodily injury, beyond a reasonable doubt. Rule 13(e), T.R.A.P., *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 2786–2792, 61 L.Ed.2d 560 (1979). This issue has no merit.

In another issue the appellant contends that the trial judge erred by refusing to grant his motion in limine to exclude the judicial records of his prior convictions. He contends they are insufficient to support a finding of habitual criminality because there were slight differences in the spelling of his name.

The appellant's status as an habitual criminal was established by judgments in the cases of *State of Oregon v. Jesse Lewis Jones*, (in which the appellant was convicted of murder in the first degree in the Circuit Court of Multnomah County, Oregon on February 28, 1972); *State of Idaho v. Jesse L. Jones*, (in which he was convicted of attempted burglary in the first degree in the District Court of Nez Perce County on June 16, 1971); and *United States of America v. Jessie Lewis Jones*, (in which the appellant was convicted of bank robbery without the use of a dangerous weapon in the United States District Court for the Eastern District of Tennessee on February 25, 1971).

TCA § 39–1–804 provides that records of prior felony convictions shall be admissible as proof that such person is an habitual criminal and that a judgment of conviction under the same name as that by which a person is charged shall be prima facie evidence that the identity of such person is the same. The statute only creates a permissive inference that the defendant is the same person, not a conclusive presumption. *State v. Woodson*, 705 S.W.2d 677, 680 (Tenn.Cr.App.1985).

The question raised here is whether *Jesse L. Jones* is the same name as *Jessie Lewis Jones* and *Jessie L. Jones* for the purposes of the "same name" provision of the statute.

■ The doctrine of "idem sonans" provides that if the name, as spelled in a legal document, though different from the correct spelling, conveys to the ear, when pronounced according to the commonly accepted methods, a sound practically identical with the correct name as commonly pronounced, the name thus given is a sufficient designation of the individual to which reference is made, and no advantage can be taken of a clerical error. *Bertha v. Smith*, 26 Tenn.App. 619, 175 S.W.2d 41, 43–44 (1943). Accuracy in the spelling of the defendant's name is not required when basically the same sound is preserved and there is no uncertainty in the description or identity of the two names. Furthermore, an abbreviation of the defendant's name is permissible. Torcia, *Wharton's Criminal Procedure*, § 275, pp. 91–92, (1975).

In *Cumbo v. State*, 205 Tenn. 260, 326 S.W.2d 454, 456 (1959), the defendant was indicted under the name of "Charles Irvin Cumbo, alias Charlie Ervin Cumbo." He was charged with being an habitual criminal. In support of this allegation, the State introduced a certified copy of an earlier conviction in North Carolina of "Chas. Cumbo, alias Irvin Cumbo." Our Supreme Court held that the difference in the name set forth in the North Carolina judgment was not at variance with the Tennessee indictment, but rather was actually corroborative of the allegation therein.

■ In this case the pronunciation of the names "Jessie" and "Jesse" are identical and the variation in the spellings is indeed slight. The letter "L" is the initial for the name "Lewis." All of the prior judgments of conviction were admissible and this issue has no merit.

In another issue the appellant contends that the habitual criminal indictments should have been dismissed because the underlying felonies were tried before a different jury than the jury which tried the allegations of habitual criminality. He contends that the intent of TCA § 39–1–805 is for the same jury to try both phases. Since that did not occur in his case, he reasons that reversal of his habitual criminal conviction is required.

The appellant recognizes that *State v. Duffel*, 665 S.W.2d 402, 404 (Tenn.Cr.App. 1983), holds that a defendant does not have an absolute right to trial on habitual criminal charges by the same jury that tried the underlying felony. However, he asks us to overrule *Duffel*, or limit its holding to its facts.

In *Duffel*, the trial of the habitual criminal charge was before a different jury because this Court affirmed the convictions on the underlying felonies, but reversed the finding of habitual criminality and remanded for a new trial on that issue only.

In this case the trial of the underlying felonies was concluded late in the day. The jury returned to court the next morning for the habitual criminal phase, at which time the appellant expressed to the court his extreme dissatisfaction with his attorney's performance. The appellant contended that he wanted to represent himself or to have another lawyer. The trial judge reluctantly continued the trial so that the appellant could obtain other counsel. Two months later the appellant was tried before another jury and found to be an habitual criminal.

■ Thus, it was the appellant who caused the habitual criminal phase to be tried before another jury. It was necessary for his new counsel to have time to prepare prior to the trial. Obviously, it would have been totally unreasonable for the trial judge to have kept the jury sequestered for two months awaiting the continuation of the trial. Nothing is better settled than the rule that an appellant cannot take advantage of errors which he committed, invited or induced the trial court to commit. *Gentry v. Betty Lou Bakeries*, 171 Tenn. 20, 100 S.W.2d 230, 231 (1937). If, by some stretch of the imagination it could be said that this was error, it was brought about by the appellant's own actions in discharging his attorney at the

conclusion of the trial of the underlying felonies. A reversal under these circumstances would place the defendant in charge of the trial rather than the trial judge and an habitual criminal charge would seldom go to trial. We adhere to our holding in *Duffel,* and this issue has no merit.

In another issue the appellant contends that the trial judge erred by failing to grant his motion for a mistrial when one of his witnesses implied that the appellant had a criminal record.

The appellant called Houston Turner, a detective from the East Ridge Police Department, to refute testimony by the state's witnesses, that he was the officer who showed the photographic array to Mr. Broxton. Mr. Turner testified as follows:

Q. Did you take any photographs to show to anybody about the case?

A. No, sir. I've took photographs of Mr. Jones before but it was on a different case.

Following this testimony the appellant's counsel requested a bench conference, which was held "off the record." He then continued his examination of Mr. Turner. At the conclusion of Mr. Turner's testimony, the appellant moved for a mistrial on the ground that Mr. Turner's answer implied that he had a criminal record and also because the answer was unresponsive to his question and intended to prejudice the jury.

■ The decision whether to grant a mistrial is within the discretion of the trial court whose decision will not be disturbed on appeal unless there was an abuse of that discretion. *State v. Hall,* 667 S.W.2d 507, 510 (Tenn.Cr.App.1983). Generally, a mistrial will be declared and the jury discharged in a criminal case only if there is "manifest necessity" requiring such action by the trial judge. *Arnold v. State,* 563 S.W.2d 792, 794 (Tenn.Cr.App.1977).

When defense counsel objects to what he believes to be inadmissible testimony, his objection to the trial judge must be included in the record. In this case an "off-the-record" "side-bar conference" was held.

While the record does not reflect what occurred at that conference, it is obvious from the context that an objection was made. However, the record does not reveal what the trial judge ruled in regard to the objection, nor does the record disclose that any curative instructions were given.

■ The appellant has the responsibility to present to the appellate courts a transcript of "such part of the evidence or proceedings as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." Rule 24(b), T.R.A.P. In that regard, counsel must insure that objections are not made at side-bar conferences or insist that the court reporter record such conferences verbatim. Furthermore, counsel must not fail to take "whatever action was reasonably available to prevent or nullify the harmful effect of an error." Rule 36(a), T.R.A.P. The failure to request curative instructions was such a failure. Furthermore, the statement did not necessarily imply that the appellant had a previous record. There are many reasons why an officer could have taken photographs of the appellant in connection with another case. There was no error in denying the motion for a mistrial.

Next, the appellant contends that he was denied assistance of counsel at the line-up, in violation of the Sixth Amendment to the United States Constitution and Article I, § 9 of the Tennessee Constitution.

At the time of the line-up, the appellant was in custody arising out of these charges. He had not been indicted, nor had an arrest warrant been issued for the robbery. Prior to the line-up, he attempted to contact his attorney but was unable to do so because his attorney was out of town. The officers offered to contact the public defender's office, but the appellant adamantly refused to accept appointed counsel. Therefore, the line-up was conducted without defense counsel being present.

■ The right to counsel attaches when "adversary judicial proceedings" are initiated against a defendant. This occurs when an arrest warrant issues, an indict-

ment or presentment has been returned by the grand jury, or a preliminary hearing has been held prior to arrest. *State v. Mitchell,* 593 S.W.2d 280, 286 (Tenn.1980). Since no "adversary judicial proceedings" had been initiated against the appellant at the time of the line-up, his right to counsel had not attached. This issue has no merit.

■ In another issue the appellant contends that the photographic identification procedure and the in-court identification procedures were unnecessarily suggestive and violated his due process rights.

Just after the crime occurred, the victim told the police that the robber was a white male, thirty-five to forty years old, weighing about 165 pounds, and having dark hair with white streaks at the temples. He also had a pencil-thin mustache. The criminal was described as wearing a green fatigue shirt over another shirt and a green cap. Several hours later the victim was shown five or six photographs of men fitting that description, although none had a mustache. The victim picked the appellant's photograph from the array and subsequently identified him at the preliminary hearing.

When the appellant was brought to court for the preliminary hearing, he was dressed in fatigues. According to the appellant and his witnesses who were present, the victim could not identify him until after he was taken from the courtroom and coached by police officers.

The victim testified that due to a delay in the proceedings he did leave the courtroom for a period of time. However, he categorically denied that he was coached or prepped by anyone. According to Mr. Broxton, he identified the appellant at the preliminary hearing from his memory of the robbery.

Obviously, the trial judge rejected the testimony of the appellant and his witnesses and accepted the testimony of the victim.

In determining whether identification procedures are unnecessarily suggestive, courts are required to look at "the totality of the circumstances." *Bennett v. State,* 530 S.W.2d 511, 513 (Tenn.1975). Looking at the circumstances in this case, it is clear that the procedures were not suggestive.

■ The victim had seen the appellant loitering about the gas station on several occasions in the days before the robbery. He also saw him around the station on the day of the robbery and observed him for twenty to thirty seconds after the gun was drawn and before he was knocked unconscious. The accuracy of his description indicates that he was paying close attention to the physical attributes of the appellant. The victim was absolutely certain that the man he identified from the photographic array and later at the preliminary hearing was the same man who robbed him. Only a few hours passed before the victim chose the appellant's photograph and only a week intervened between the robbery and the preliminary hearing. These factors all point to the fact that the identification was reliable, and there was virtually no likelihood of a misidentification. Furthermore, the witnesses at the dental laboratory also identified the appellant at the corporal line-up. This issue has no merit.

The appellant also contends that TCA § 39–1–804 unconstitutionally shifts the burden of proof to him by providing that convictions under the same name may be used for enhancement. He contends that this statute creates a mandatory presumption which requires him to present proof to offset the state's proof.

■ Unfortunately, the appellant did not present this issue to the trial judge in his motion for a new trial. Thus, this issue was waived. Rule 3(e), T.R.A.P.

The trial judge incorrectly instructed the jury as follows:

> Members of the jury, records of prior convictions of the defendant are evidence which you may consider, but only as proof that he is in fact an habitual criminal as that term has been defined above. A judgment of conviction of any person under the same name as that of the defendant is prima facie evidence that the identity of such person is the same as the defendant. *Prima facie in law means that it is to be taken as an*

*established fact unless and until it is overturned or rebutted by proof.*

The appellant contends that this constituted an impermissible reference to his failure to testify or to present evidence.

 The prima facie definition is incorrect in light of *State v. James Randolph Funzie*, Tennessee Criminal Appeals, opinion filed at Jackson, March 19, 1986 [Available on WESTLAW, TN–CS database]. In that case this Court held that the proper instruction to the jury is that the jury "may, but need not, infer from the evidence that the defendant and the individual named in the prior convictions are the same." However, the appellant has also waived this issue because he did not object to the charge when it was given. Furthermore, he did not raise the issue in his motion for a new trial as required by Rule 3(e), T.R.A.P. Finally, the proposed instruction which he submitted is likewise an insufficient statement of the law. His proposed instruction was only "that whether the defendant is an habitual criminal is for the jury." Thus, this issue was waived.

 In the final issue the appellant contends that his trial counsel's performance was so deficient that he was deprived of his constitutional right to the effective assistance of counsel.

In this regard the appellant contends that his counsel failed to contact two witnesses to the robbery who would have testified that the appellant was not the robber. He contends that his counsel did not meet with him often enough to adequately prepare a defense. He says that his counsel did not introduce evidence tending to rebut the state's case. Finally, he contends that his counsel failed to ask one of the alibi witnesses to bring records to prove that he was at home on the day of the robbery.

At the hearing on the motion for a new trial, the appellant and his trial defense counsel testified. His counsel stated that he did not interview one witness who allegedly saw the robbery because he could not locate her. The other witness said she was related to the appellant by marriage, and her testimony was weak as to what she actually saw. He testified that he met with the appellant five or six times before trial. While he did introduce evidence tending to rebut the state's case, he decided not to introduce the deposition of the president of a Memphis bank because it did not place the appellant in Memphis for the entire period that the witnesses observed the appellant loitering about the gas station prior to the robbery. Counsel requested and received all discoverable material from the state. He attempted to have the line-up identification suppressed on the ground of suggestiveness. Finally, counsel recounted that he did not ask Tommy Ralph Eadie to bring his business records with him, since they would not have bolstered his testimony.

The trial court found that counsel's performance met the standards of *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn.1975), in which our Supreme Court held that the counsel's performance must be within the "range of competence demanded of attorneys in criminal cases." The trial court's decision is totally supported by the record. Our examination of the trial record revealed that counsel's performance was far in excess of the minimum standard. Counsel presented an alibi defense which, had it been believed by the jury, would have resulted in an acquittal. The fact that the jury refused to believe the appellant's witnesses is no reflection upon the vigor with which his counsel presented the appellant's case. Furthermore, his counsel's cross-examination of the state's witnesses was absolutely superb. The allegation of ineffective assistance of counsel is patently without merit.

Finding no merit to any of the issues, the judgment is affirmed.

DUNCAN and DAUGHTREY, JJ., concur.