IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

AUGUST 1997 SESSION



FILED

December 23, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | C.C.A. 03C01-9612-CR-00460 |
| Appellee, | ) | |
| | ) | JOHNSON COUNTY |
| v. | ) | |
| | ) | Hon. Lynn W. Brown |
| JIMMY BOWEN | ) | |
| | ) | (Poss. of Contraband in Penal Inst.) |
| Appellant. | ) | |
| | ) | |

FOR THE APPELLANT

Laura Rule Hendricks
Eldridge, Irvine & Hendricks
606 W. Main Street, Suite 350
P.O. Box 84
Knoxville, TN. 37901-0084

FOR THE APPELLEE

John Knox Walkup
Attorney General & Reporter

Sandy Copous Patrick
Assistant Attorney General
2nd Floor Cordell Hull Building
425 Fifth Avenue North
Nashville, TN. 37243-0943

David E. Crockett
District Attorney General
Route 19, Box 99
Johnson City, TN. 37601

Lisa D. Nidiffer
Assistant District Attorney General
Unicoi County Courthouse
Erwin, TN. 37650

OPINION FILED:_____

AFFIRMED

WILLIAM M. BARKER, JUDGE

**OPINION**

The appellant, Jimmy Bowen, appeals as of right his conviction and sentence following a jury trial in the Criminal Court of Johnson County. The appellant was indicted by the Johnson County Grand Jury for the knowing possession of contraband, to wit: marijuana, in a state penal institution where prisoners are quartered, without the express written consent of the institution's chief administrator, a Class C felony. <u>See</u> Tenn. Code Ann. § 39-16-201 (1991 repl.). Following his conviction, the appellant was ordered to pay a five thousand ($5,000) dollar fine and serve six years in the Tennessee Department of Correction as a Range I standard offender.[1] The sentence was ordered to run consecutive to a seven-year sentence the appellant was then serving for convictions he received in 1993.

The judgment of the trial court is affirmed.

The appellant raises five issues in this appeal. He contends that: (1) The trial court improperly denied his motion for a mistrial after the prosecution elicited witness testimony concerning the appellant's invocation of his right to remain silent; (2) The State failed to prove an essential element of the charged offense concerning the express written consent of the prison's chief administrator; (3) His conviction and sentence for the contraband possession, following administrative discipline for the same offense, violated double jeopardy; (4) The State arbitrarily selected the appellant for prosecution in violation of equal protection; and (5) The trial court erred in ruling that the chain of custody over the package marked as exhibit one was sufficient to allow it into evidence.

**FACTUAL BACKGROUND**

The appellant was an inmate at the Northeast Correctional Center (NECC) in Johnson City. On February 19, 1995, he received a visit from his wife in the NECC

---

[1]At the sentencing hearing, the trial court acknowledged that the appellant had multiple convictions dating back to 1967 and should be sentenced as a Range II or III offender. However, the State failed to provide proper notice as to those past convictions before the sentencing hearing. The trial court, therefore, reluctantly sentenced the appellant as a Range I standard offender. That sentencing range is reflected in the corrected judgment entered on August 8, 1996.

2

visiting gallery. During the visit, Sergeant Pat Carper observed the appellant's wife reach under her blouse, pull out a small wrapped package, and secretly hand it to the appellant. Sergeant Carper immediately directed another NECC employee, Officer David Musser, to apprehend the appellant in the gallery and take him to the strip search room. On the way to the search room, Officer Musser observed the appellant attempt to hand the wrapped package to other inmates before he threw it onto a vending table. Officer Musser, thereafter, obtained the package and discovered that it contained a plant-like material wrapped in black electrical tape. He and Sergeant Carper delivered the package to internal affairs at the NECC for field testing.[2]

At trial, Lieutenant Randy Lee, an officer with internal affairs at NECC, testified that he received the package from Officer Musser and Sergeant Carper. Lee stated that after he obtained the package, he sent it directly to the TBI Crime Lab in Knoxville for field testing. When the tests were concluded, Lee recovered the package along with a report indicating that the plant-like material was 29.8 grams of marijuana. Lee testified that the package, admitted into evidence as exhibit one, matched the package he sent to the TBI Lab.

Celeste White, a chemist for the TBI Crime Lab, testified for the State concerning the testing and handling of the marijuana package. White stated that she received the package from Lieutenant Lee on February 27, 1995. Upon receipt at the crime lab, the package was given a TBI label containing a lab number, the appellant's name, the date received, and White's initials. The package was then stored in an evidence vault until the field tests were conducted. White testified that she tested the plant material and discovered that it was approximately 29.8 grams of marijuana. She stated that after the tests were concluded, the package was returned to the NECC along with a report indicating the test results.

---

[2]At trial, the State introduced into evidence a clear plastic bag containing a plant-like material and black electrical tape. The bag was admitted and marked as exhibit one. Sergeant Carper testified that the package in exhibit one was similar to the taped object taken from the appellant. Officer Musser also testified and indicated that exhibit one was identical to the package he took from the appellant.

## ANALYSIS

The appellant first contends that he was entitled to a mistrial after the prosecutor elicited testimony concerning the appellant's invocation of his right to remain silent.

This issue is without merit.

At trial, Lieutenant Lee testified that he met with the appellant after the package of marijuana was discovered and read the appellant his <u>Miranda</u> rights. Lee further indicated that the appellant signed a rights-waiver form. Over the defense counsel's objection, the prosecutor continued a line of questioning in which Lieutenant Lee ultimately stated that, during the preliminary investigation, the appellant "had no statement to make whatsoever."

Following Lee's testimony, the defense counsel moved for a mistrial. The trial court denied the defense motion and chose to administer a special jury instruction to remedy the prosecutor's error. The trial court instructed the jury as follows:

> Members of the Jury, the law in this country has been for two hundred years that that you cannot consider someone's silence against them. In other words, if someone chooses to not make a statement just as if they choose to not testify on their behalf if they're a defendant in a trial, you can't consider that for any purpose whatsoever ever, either for them or against them. And, the district attorney should should not have gotten anything about this in the record. It was improper. And so, first, I I must instruct you that you are not to consider whatsoever, certainly you're not to consider against Mr. Bowen if if you find that that he chose not to talk to the investigator because everybody's got that right. If an investigator walks up to you and asks you about something and you're got a right to say, 'sorry. I don't want to talk about it. Go prove your case and do it whatever way you want to, but I'm not going to talk to you.' And, that's been the law of the land for good reason for hundreds of years.

After giving the jury instruction, the trial court polled each juror to determine if he or she could completely disregard the testimony concerning the appellant's silence. Only one of the twelve jurors expressed difficulty in following the trial court's instruction. The trial judge acknowledged the juror's hesitancy and took special care to thoroughly question and instruct the juror. After an extensive open-court interview, each juror assured the trial court that the testimony concerning the appellant's silence

4

would be disregarded. The trial court determined that a mistrial was unnecessary.

The decision whether to grant a mistrial is within the sound discretion of the trial court and will not be overturned on appeal unless there was an abuse of that discretion. See State v. Seay, 945 S.W.2d 755, 764 (Tenn. Crim. App. 1996); State v. Jones, 733 S.W.2d 517, 522 (Tenn. Crim. App. 1987). A mistrial is usually appropriate in a criminal case only where there is a "manifest necessity" to correct damage done to the judicial process when some event has occurred which precludes an impartial verdict. See Arnold v. State, 563 S.W.2d 792, 794 (Tenn. Crim. App. 1977). The burden of demonstrating a "manifest necessity" lies with the appellant.

In this case, we find that the trial court exercised proper discretion in denying the appellant's motion for a mistrial. Although we agree that the prosecutor acted improperly in eliciting testimony concerning the appellant's silence, we find that the trial court's curative instruction adequately remedied any possible prejudice from the improper testimony. The appellant has failed to demonstrate a manifest necessity sufficient to warrant a mistrial.

## II.

The appellant next contends that the State failed to prove an essential element of the charged offense, to wit: that the prison's chief administrator had not given express written consent for the appellant to possess marijuana.

Although this issue is extremely close, we find it to be without merit.

The appellant's argument turns on whether the evidence at trial was sufficient to sustain his conviction. When an appellant challenges the sufficiency of the convicting evidence, we must review the evidence in the light most favorable to the prosecution in determining whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." See Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We do not reweigh or re-evaluate the evidence and are required to afford the State the strongest legitimate

5

view of the proof contained in the record as well as all reasonable and legitimate inferences which may be drawn therefrom. See State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

Questions concerning the credibility of witnesses, the weight and value to be given to the evidence, and any factual issues raised by the evidence are resolved by the trier of fact, not this Court. See Cabbage, 571 S.W.2d at 835. A guilty verdict rendered by the jury and approved by the trial judge accredits the testimony of the witnesses for the State, and a presumption of guilt replaces the presumption of innocence. See State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).

An appellant challenging the sufficiency of the evidence has the burden of demonstrating to this Court why the evidence is insufficient to support the verdict returned by the trier of fact. This Court will not disturb a verdict of guilt for lack of sufficient evidence unless the facts contained in the record and any inferences which may be drawn from the facts are insufficient, as a matter of law, for a rational trier of fact to find the appellant guilty beyond a reasonable doubt. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

In this case, a jury convicted the appellant of marijuana possession in a state penal institution without the express written consent of the prison's chief administrator. The applicable statute provides that, "[i]t is unlawful for any person to [k]nowingly possess any of the materials prohibited in subdivision (a)(1) while present in any penal institution where prisoners are quartered or under custodial supervision without the express written consent of the chief administrator of the institution." See Tenn. Code Ann. § 39-16-201(a)(2) (Supp. 1996). Subsection (a)(1) of the statute includes controlled substances in the list of prohibited materials.

The appellant contends that the convicting evidence was insufficient because the State failed to prove that he possessed the marijuana without the express written consent of the prison's chief administrator. Although we acknowledge that direct testimony from the NECC warden would have prevented any issue in this regard, we

6

find that the essential element concerning the lack of express written consent was sufficiently proved by circumstantial evidence.

Circumstantial evidence includes collateral facts and circumstances which do not directly prove the fact in issue but from which the fact may be logically inferred. See State v. Thompson, 519 S.W.2d 789, 792-93 (Tenn. 1975). We find that the record in this case contains several facts and circumstances sufficient to prove that the prison's chief administrator had not given express written consent to the appellant's possession of marijuana.

First, the record reflects that the appellant's wife surreptitiously handed the appellant a package tightly wrapped and concealed in black electrical tape. When NECC prison guards acted to apprehend the appellant and obtain the hidden package, the appellant tried to discard the package by passing it off to other prison inmates. The actions of the appellant and his wife in attempting to smuggle the package into the NECC are clearly inconsistent with the notion that the appellant had express written consent to possess marijuana. From that evidence, a reasonable person could conclude that the appellant did not have the warden's express written consent to possess the package of marijuana. See State v. Jimmy Cullop, Jr., No. 03C01-9607-CR-00281 (Tenn. Crim. App., at Knoxville, March 18, 1997).

Moreover, at the time of the appellant's offense, marijuana was a Schedule II controlled substance which had no legal use in the State of Tennessee. See Tenn. Code Ann. § 39-17-408 (6)(A) (1991 repl.).[3] It is almost inconceivable that a prison administrator would give permission for an inmate to possess a totally illegal substance in prison. We, therefore, conclude that the jury was justified in finding

---

[3]The Tennessee Code continues to treat marijuana as a Schedule II controlled substance. See Tenn. Code Ann. § 39-17-408 (6)(A) (1997). Under the Tennessee Code, a controlled substance is listed in Schedule II if the commissioner of health finds that: (1) the substance has a high potential for abuse; (2) it has a currently accepted medical use in treatment in the United States, or currently accepted medical use with severe restrictions; and (3) the abuse of the substance may lead to sever psychic or physical dependence. See Tenn. Code Ann. § 39-17-407 (1997). Tennessee Code Annotated section 39-17-408 (6)(A) treats marijuana as a Schedule II controlled substance "only for the purposes enumerated in the Controlled Substances Therapeutic Research Act, compiled in title 68, chapter 52" of the Tennessee Code. However, the General Assembly repealed chapter 52 of title 68 in 1992. See Tenn. Code Ann. §§ 68-52-101 -- 107 (repealed 1992).

beyond a reasonable doubt that the appellant possessed contraband in a state penal institution without the express written consent of the prison's chief administrator.

**III.**

The appellant next contends that his conviction and sentence for the possession of contraband in the State penal institution violated double jeopardy. He argues that the administrative discipline he received from the Tennessee Department of Correction, prior to trial, precluded the State from prosecuting him thereafter for the same offense.

This issue is without merit.

Following the discovery of marijuana in the appellant's possession, the appellant received administrative discipline by prison authorities at the Tennessee Department of Correction ("TDOC").[4] The appellant relies on the decision in United States v. Halper, 490 U.S. 435, 109 S.Ct. 1892 (1989) to assert that his prosecution and conviction for the possession of contraband, following administrative discipline for the same offense, placed him in double jeopardy.

The appellant's reliance on Halper is misplaced. In Halper, the United States Supreme Court addressed whether the imposition of a $130,000 civil penalty for Medicare fraud, following a criminal conviction for the same offense, violated double jeopardy. See 109 S.Ct. at 1896. The respondent in Halper had been convicted in criminal proceedings before the Government filed a civil suit against him for the same offense. See id. The Court held that a $130,000 liability in the civil suit constituted a second punishment because the penalty amount was disproportionate to the actual harm caused by the respondent's actions. See id. at 1904. The Court, therefore, held

---

[4]The record contains evidence from a pre-trial hearing in which the appellant's counsel argued that the appellant's upcoming trial was selective prosecution in violation of equal protection and double jeopardy. At that hearing, Lieutenant Randy Lee testified that the appellant received three days of segregated confinement as administrative discipline for the marijuana possession. Lieutenant Lee further testified that administrative discipline at the NECC is imposed by a TDOC Disciplinary Board. According to Lieutenant Lee, the Disciplinary Board never adds an additional sentence or jail time to what the inmate is currently serving. Instead, disciplinary measures include warnings, restrictions of privileges, assignments of extra work duty, and segregated confinement.

that the civil penalty violated double jeopardy.

The Supreme Court's decision in <u>Halper</u> is not applicable to the facts in the appellant's case.  Unlike the respondent in <u>Halper</u>, the appellant was not subjected to liability in two separate judicial proceedings.  To the contrary, the appellant was merely disciplined by administrative authorities at the TDOC before his trial in the criminal court.

It is well settled in Tennessee that administrative proceedings by state prison authorities do not place defendants in "jeopardy" within the meaning of the Double Jeopardy Clause.  <u>See</u> <u>Turner v. Gore</u>, 175 S.W.2d 317, 319 (Tenn. 1943);  <u>Ray v. State</u>, 577 S.W.2d 681, 682 (Tenn. Crim. App. 1978); <u>Terry Davis v. State</u>, No. 03C01-9610-CR-00358 (Tenn. Crim. App., at Knoxville, June 12, 1997).  Therefore, we conclude that the administrative discipline in this case did not preclude the State from prosecuting the appellant for the same offense.

IV.

The appellant next contends that the State arbitrarily selected him for prosecution in violation of his equal protection rights.  The appellant argues that the NECC warden arbitrarily determines which cases are referred to the district attorney for prosecution.

This issue is without merit.

The law in Tennessee is well settled that state officials enjoy broad discretion in determining what cases are selected for prosecution.  <u>See</u> <u>Cooper v. State</u>, 847 S.W.2d 521, 536 (Tenn. Crim. App. 1992); <u>Yearwood v. State</u>, 455 S.W.2d 612, 617 (Tenn. Crim. App. 1970).  That discretion does not violate the principles of equal protection unless the choice to prosecute is "deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification."  <u>See</u> <u>Oyler v. Boles</u>, 368 U.S. 448, 456 (1962).

In this case, the record is devoid of any evidence demonstrating that the warden at the NECC arbitrarily selects cases to be referred for prosecution. To the contrary, at a pre-trial hearing, Warden Howard Carlton of the NECC testified that he considers specific factors before deciding whether to refer a case to the district attorney. Warden Carlton stated that he considers whether the case involves a felony and whether there are sufficient facts for the district attorney to present in criminal proceedings. Warden Carlton further stated that criteria such as an inmate's race, religion, or ethnic origin is never considered.

We find that the discretion exercised by the NECC warden does not violate the principles of equal protection. The appellant's claim that his prosecution violated the Equal Protection Clause is without merit.

**V.**

The appellant next contends that the chain of custody over the package marked as exhibit one was insufficient to allow it into evidence.

This issue is without merit.

During the direct examination of Sergeant Carper, the prosecution introduced a clear plastic bag, marked as exhibit one, containing a plant-like material with black electrical tape. The record reflects that the appellant failed to object to the admission of the plastic bag at trial. Therefore, in this appeal, the appellant has waived any challenge to the admission of the package into evidence.

Moreover, even if the issue were properly preserved for appeal, we find that the State established legally sufficient chain of custody over the testing and handling of the package. We conclude that the trial court exercised proper discretion in allowing the package into evidence.

Based upon the foregoing, the judgment of the trial court is affirmed.

_____
WILLIAM M. BARKER, JUDGE


CONCUR:


_____
GARY R. WADE, JUDGE


_____
PAUL G. SUMMERS, JUDGE