# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### July 15, 2014 Session

## STATE OF TENNESSEE v. ANTOINE CARDET SMITH

**Appeal from the Circuit Court for Montgomery County**
**No. 41101125     Michael R. Jones, Judge**

---

**No. M2013-01891-CCA-R3-CD - Filed January 9, 2015**

---

Defendant, Antoine Cardet Smith, was indicted by the Montgomery County grand jury for one count of aggravated robbery. A jury found Defendant guilty of the charged offense, and the trial court sentenced Defendant to serve 11 years and six months in the Tennessee Department of Correction. Defendant appeals his conviction and asserts that the trial court erred by denying his motion to suppress evidence of his identification resulting from a photographic lineup and evidence of a DNA comparison; that the evidence was insufficient to support his conviction; and that the trial court erred by denying his motion for new trial based on the comments of a prospective juror during voir dire. Having carefully reviewed the record before us, we find no error and affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, P.J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Stephanie D. Ritchie, Clarksville, Tennessee, for the appellant, Antoine Cardet Smith.

Herbert H. Slatery, III, Attorney General and Reporter; Brent C. Cherry, Senior Counsel; John Wesley Carney, Jr., District Attorney General; and Lee Willoughby, Assistant District Attorney General, for the appellee, the State of Tennessee.

## OPINION

*Trial*

On October 4, 2010, Veronica Parson was working as a store clerk at Cirilla's on Fort Campbell Boulevard in Clarksville. At approximately 8:00 p.m., Defendant entered the

store. He was wearing construction overalls, "work boots," a "beanie," and bifocals. Ms. Parson testified that she was able to see Defendant clearly. Ms. Parson asked Defendant if she could assist him, and Defendant replied that he was looking for something for his girlfriend. Defendant chose an article of lingerie and took it to the counter. Ms. Parson testified that Defendant spoke with a Jamaican accent. While Ms. Parson was ringing up the merchandise, Defendant put a paper bag on the counter and "pulled out a gun partially out of his pocket to kind of show [Ms. Parson] and he said put the money in the bag." Ms. Parson testified that it was a handgun and "[i]t looked silver." About the gun, Ms. Parson testified, "I saw it partially. But, yeah, I know what a handgun looks like." She testified that the register contained approximately $170 in cash. She put the money inside the bag, and Defendant "kind of leaned over the counter and was like was that all[?]" Ms. Parson backed away to allow Defendant to see that the register was empty. Defendant "grabbed the bag and snagged the lingerie and left." Ms. Parson testified that the encounter lasted approximately five minutes. A store surveillance video of the incident was played for the jury.

Ms. Parson subsequently viewed a photographic lineup. She did not identify anyone in the lineup as the perpetrator. Several months later, Ms. Parson viewed another photographic lineup. She identified Defendant as the perpetrator in the second photographic lineup. About the second photographic lineup, Ms. Parson testified, "I've always been good with remembering faces, and it just – once I saw it it clicked." She testified that Defendant's nose was recognizable to her, and she was immediately able to identify him as the perpetrator. She testified, "[i]t was the way he looked. It was the way he's – like I said, the way his nose was shaped, the way his face was shaped. He kind of had – kind of like a small kind of rounded head."

Officer Raymond Carroll, of the Clarksville Police Department, responded to a report of an aggravated robbery at Cirilla's store. He was the first officer to arrive at the scene. He spoke to Ms. Parson, and she described the perpetrator as "[a] black male, mid-thirties, a hundred eighty to two hundred pounds[,] wearing a gray hoodie, tan overalls, [and] she said he had a Jamaican accent." Officer Carroll found lingerie, tan overalls, a black "golfer style hat," and a cigarette butt in the alleyway beside the store. There was a bifocal lens inside the pocket of the coveralls. Officer Carroll testified that he subsequently had a conversation with Defendant, and Defendant told him that he was from Jamaica.

Special Agent Mark Dunlap, of the Tennessee Bureau of Investigation (TBI), performed DNA analysis on the overalls, golf cap, and cigarette butt recovered from the crime scene. Agent Dunlap testified that blood stains on the overalls were tested for DNA and attributed to an unknown male. Agent Dunlap testified that the overalls were also tested for "touch DNA," and "the profile was a mixture of genetic material." Agent Dunlap testified that "the major contributor, in other words, the person who has more DNA there

than – than anyone else was consistent with unknown male one, that – that is the same DNA from the blood stain." The minor contributor was consistent with Defendant. A partial DNA profile was taken from the golf cap/beanie, and it also matched Defendant.

Hunter Greene, of the TBI, examined latent prints taken from a plastic coat hanger, a plastic store bag, and a bifocal lens recovered from the crime scene. He compared the prints with those of Defendant and determined that the prints did not match.

Detective Andrew Hurst, of the Clarksville Police Department, was the lead investigator in this case. Detective Hurst testified that the items collected at the crime scene were submitted to the TBI for DNA analysis. Detective Hurst received a call from a TBI lab technician stating that "there were three individuals' DNA . . . on the clothing." Two of the individuals were Caucasian, which led Detective Hurst to eliminate them as suspects in the aggravated robbery. Detective Hurst acquired driver's license photographs of the other two men to confirm they were Caucasian.

Detective Hurst testified that when he called Ms. Parson and asked her to view a second photo lineup, he told her that a new suspect had been developed. Detective Hurst did not tell Ms. Parson that DNA or fingerprint evidence had been obtained. Regarding the second lineup, Detective Hurst testified,

> I brought her into an interview room. Again, I explained to her that I developed another suspect, I had another six pack lineup that I would like her to view. I handed her the – or showed her the – I sat the lineup on the table and she immediately went to [Defendant], without a doubt and then she explained to me that there was no doubt in her mind that that was the individual.

***Suppression hearing***

At a pretrial hearing on Defendant's motion to suppress Ms. Parson's identification of him during the photographic lineup, Ms. Parson testified that the first time she met with Detective Hurst, he showed her a photographic lineup, and Ms. Parson did not identify anyone in the lineup. She testified that she met with Detective Hurst again a "few months" after the incident. Detective Hurst showed her another photographic lineup, and Ms. Parson immediately identified Defendant as the person who robbed the store. Ms. Parson testified on cross-examination as follows:

> Q        And when you went back to view this lineup, did Detective Hurst make any statements along the lines of a suspect?

A      No, not really, not that I can remember.

Q      Did he make any mention of DNA?

A      Not at that time.

Q      When did he mention it?

A      The second time after I picked out the person on it.

Q      What did he say to you?

A      As far as I can remember, he said that they had some DNA evidence, other than that, I don't remember.

Q      Did he tell you you did a good job?

A      (no audible response)

Q      Did he tell you that you picked the right person?

A      He just said that that's one of – a suspect they had, something like that. I can't remember.

Q      So he never at any point told you that there had been a DNA matched to anybody?

A      Not specifically, no.

Q      Did you view any photos or still photos before you made – looked at the photo lineup?

A      No.

Q      You didn't look at any evidence that was collected the night of the robbery?

A      No ma'am.

Detective Hurst testified that he initially developed one person as a suspect in this case, but "it was a long shot, it was a shot in the dark." Ms. Parson was shown a photo lineup with that person in it, and she did not identify anyone. Defendant's photo was not in the first photo lineup. Detective Hurst testified that "[D]efendant was the only black male in th[e] group of individuals" whose DNA was found on the clothing outside the store. Detective Hurst developed Defendant as a suspect, and made another photographic lineup with Defendant in it to show to Ms. Parson. Detective Hurst testified that he did not suggest or point out Defendant to Ms. Parson.

***Analysis***

*Motion to suppress photographic lineup and DNA evidence*

Defendant contends that the trial court erred by denying his motion to suppress the identification of Defendant by the victim in a photographic lineup and through DNA evidence. Defendant asserts that the photographic lineup was unduly suggestive. Defendant also argues that the trial court erred by allowing into evidence testimony that Defendant was

a minor contributor of DNA on clothing items found near the scene of the crime. The State responds that Defendant has waived this issue by failing to make proper references to the record. *See* Tenn. Ct. Crim. App. R. 10(b). In his brief, Defendant makes no reference to the record on appeal. Generally, "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." *Id*. The State does not, however, point out in its brief that Defendant failed to include this issue in his motion for new trial. Neither the order denying Defendant's motion for new trial, nor the transcript of the hearing on Defendant's motion for new trial is included in the record before us. Defendant's motion for new trial is included in the record and makes no mention of the trial court's denial of his motion to suppress. Issues relating to the admission or exclusion of evidence that are not raised in a motion for new trial is deemed to be waived on appeal. *See* Tenn. R. App. P. 3(e). We will nevertheless address Defendant's issue because the State fails to assert that the issue is waived for not being included in the motion for new trial, and because we are able in this case to review the issue expeditiously even without Defendant making references to the record.

An appellate court may consider the evidence presented at the suppression hearing as well as at trial in determining whether the trial court properly denied a pretrial motion to suppress. *State v. Henning*, 975 S.W.2d 290, 297-99 (Tenn. 1998). In conducting our review, it is a settled principle that "[f]indings of fact made by the trial judge after an evidentiary hearing of a motion to suppress are afforded the weight of a jury verdict, and this court will not set aside the trial court's judgment unless the evidence contained in the record preponderates against his findings." *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996) (quoting *State v. Adams*, 859 S.W.2d 359, 362 (Tenn. Crim. App. 1992)). In addition, the Tennessee Supreme Court has stated:

> Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact. The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence. So long as the greater weight of the evidence supports the trial court's findings, those findings shall be upheld. In other words, a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise.

*Id*. at 23.

*Photographic lineup*

Our analysis of this issue is based upon the long-standing precedent set out in the United States Supreme Court's holdings in *Simmons v. U.S.*, 390 U.S. 377, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968) and *Neil v. Biggers*, 409 U.S. 188, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972). *See State v. Reid*, 213 S.W.3d 792, 825 (Tenn. 2006). In *Simmons*, the Court held that "convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." 390 U.S. at 384. In *Neil*, the Court established a two-part analysis which the trial court must apply to determine the validity of a pretrial identification. 409 U .S. at 198-200. First, the trial court must determine whether the identification procedure was unnecessarily suggestive. *Id*. at 198. Next, if the trial court determines that the identification was unnecessarily suggestive, it must then consider whether, under the totality of the circumstances, the identification procedure was nonetheless reliable. *Id*. at 199. In Tennessee, it is unnecessary to apply the totality of the circumstances test described in *Biggers* if the trial court determines that the identification procedure was not unnecessarily suggestive. *See State v. Butler*, 795 S.W.2d 680, 686 (Tenn. Crim. App. 1990) (declining to apply the totality of the circumstances test when a lineup was not found to be unnecessarily suggestive).

In the case *sub judice*, there is nothing suggestive about the photographic lineup in which Ms. Parson identified Defendant. There are six men in the lineup. The men are all young African-Americans and are all similar in appearance. There is nothing about the lineup to highlight or suggest one photograph over another. Ms. Parson testified at the suppression hearing that Detective Hurst did not make any comments to her about having developed a suspect based on DNA evidence until after she identified Defendant in the lineup. She testified, "[a]s far as I can remember, he said that they had some DNA evidence, other than that, I don't remember."

At the conclusion of the hearing on Defendant's motion to suppress the photographic lineup, the trial court found as follows:

> As far as the aggravated robbery is concerned, we heard the testimony of the clerk of the business establishment. The Court was impressed with her ability to recall the details, but he did not just walk in and rob. The person engaged this young lady in conversation. They walked around looking at different items and as she said, she was asking questions of this defendant, by her identification, about his girlfriend.

Also strengthening her identification is that she had at some point, not too long after the robbery, been presented a lineup that did not contain this defendant and she did not identify anyone from that lineup. She had not viewed anything between the – the first lineup and the second lineup, which was several months later. She was able again without hesitation and without prompting, to identify this defendant as the person who committed the crime. There is nothing to indicate to the Court that this was a suggestive lineup, whatsoever[,] or that the picture of the defendant was suggested to this witness.

We conclude that the record does not preponderate against the trial court's finding. The photographic lineup was not unnecessarily suggestive. Defendant is not entitled to relief on this issue.

*DNA evidence*

The State has failed to address in its brief Defendant's assertion that the trial court erred by allowing into evidence DNA analysis concluding that Defendant was a minor contributor of DNA on the clothing found near the scene of the crime. Defendant argues that the evidence was not relevant under Tennessee Rule of Evidence 403. Under Rule 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Regarding the admission of the DNA evidence, the trial court concluded as follows:

The Court feels confident that the TBI person who testifies concerning the DNA will be able to explain to the jury, the determination of what major and minor contributors mean. It is not direct evidence that this defendant committed the crime; however, it is circumstantial evidence that he was present as this clothing or whatever contained his DNA, so I am going to – it is relevant. It is not unduly prejudicial by any means. So I am going to deny that motion.

We conclude that the evidence does not preponderate against the trial court's finding. Evidence that Defendant was a minor contributor of DNA on the clothing found near the crime scene was not unfairly prejudicial, misleading, or a needless presentation of cumulative evidence. Agent Dunlap explained to the jury the difference between a major and minor contributor. Defendant is not entitled to relief on this issue.

*Sufficiency of the evidence*

Defendant contends that the evidence at trial was insufficient to support his conviction for aggravated robbery. "When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *see also Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); Tenn. R. App. P. 13(e). "Because a guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt, on appeal a defendant bears the burden of showing why the evidence is insufficient to support the conviction." *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012); *see also State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The State must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom. *See Wagner*, 382 S.W.3d at 297; *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). The jury, as the finder of fact, is responsible for assessing the credibility of the witnesses, deciding the weight to accord their testimony, and reconciling any conflicts in the proof. *See Wagner*, 382 S.W.3d at 297; *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). On appeal, this court cannot re-weigh the evidence or draw any inferences from it other than those drawn by the jury. *See Wagner*, 382 S.W.3d at 297; *Cabbage*, 571 S.W.2d at 835. A guilty verdict can be based upon direct evidence, circumstantial evidence, or a combination of both. "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *Dorantes*, 331 S.W.3d at 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

Robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." T.C.A. § 39-13-401. Aggravated robbery as applicable in this case is robbery "(1) [a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon[.]" T.C.A. § 39-13-402(a)(1).

Defendant asserts that the proof did not establish that Defendant used a deadly weapon to accomplish the robbery and that the proof was insufficient to establish Defendant's identity as the perpetrator. Ms. Parson identified Defendant in a photographic lineup and at trial as the man who came into the store where she was working and demanded that she fill a bag with money. Ms. Parson testified that Defendant partially removed a silver handgun from his pocket. A store surveillance video, in which Ms. Parson also identified Defendant as the perpetrator, showed the robbery while it was occurring. Ms. Parson's identification of Defendant is supported by DNA evidence found on clothing recovered

outside the store. The clothing found outside the store matches Ms. Parson's description of the clothing Defendant was wearing.

Defendant asserts that "the victim was not threatened in a manner consistent with the requirements of T[.]C[.]A[.] [§] 39-13-402, in that she was not intentionally and violently threatened with a deadly weapon." A plain reading of the statute, however, does not require the elements suggested by Defendant. Rather, as stated above, aggravated robbery is robbery "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon[.]" T.C.A. § 39-13-402(a)(1). Ms. Parson's testimony was clear that she saw Defendant partially remove a silver handgun from his coveralls when he demanded money from her. The evidence was sufficient for any rational trier of fact to conclude that Defendant displayed what the victim reasonably believed to be a deadly weapon. Defendant is not entitled to relief on this issue.

*Improper juror comments*

Finally, Defendant contends that the trial court erred by denying his motion for new trial on the basis that he did not receive a fair trial because a prospective juror made inappropriate comments during voir dire, and those comments "substantially and irreparably prejudiced" Defendant's case. The State responds that Defendant has failed to make appropriate references to the record or support his argument with legal authority, therefore the issue should be considered waived in accordance with Tenn. Ct. Crim. App. R. 10(b). Nevertheless, we find no error in the trial court's failure to grant a mistrial based on the prospective juror's comments.

During jury selection, a prospective juror, Mr. Lee, told the trial court that he was "acquainted with the defendant," that he knew the defendant, that he had "dealt with the defendant several times," and that he "probably [knew] a little bit more about the defendant than [he needed] to." The trial court excused Mr. Lee without comment. In a bench conference, defense counsel requested a mistrial, arguing that Mr. Lee's comments "completely tainted this entire pool of jurors." The trial court found that there was "nothing in front of me that says that [the other prospective jurors] would know that he [Mr. Lee] works for the jail, or wherever he works." The trial court denied the motion.

The decision of whether to grant a mistrial is within the sound discretion of the trial court and will not be overturned on appeal absent an abuse of discretion. *State v. Reid*, 91 S.W.3d 247, 279 (Tenn. 2002). A mistrial is declared in order to "to correct damage done to the judicial process when some event has occurred which precludes an impartial verdict." *State v. Welcome*, 280 S.W.3d 215, 222 (Tenn. Crim. App. 2007). Only manifest necessity justifies the declaration of a mistrial, and the defendant bears the burden of showing manifest

necessity. *State v. Williams*, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996). A mistrial is appropriate where a trial cannot continue, or the trial's continuation would be a miscarriage of justice. *State v. Robinson*, 146 S.W.3d 469, 494 (Tenn. 2004).

Our review of the record shows nothing to support Defendant's assertion that Mr. Lee said or did something to suggest to the other prospective jurors that Defendant had a prior criminal record. After Mr. Lee had been excused from the jury, defense counsel questioned the prospective jurors as follows:

| [Defense counsel]: | Does anyone know any of the other jurors? I think we just dismissed Mr. Lee. Did anyone know Mr. Lee? (Prospective juror raised her hand) |
| Ms. Nicholson: | He's my sergeant. |
| [Defense counsel]: | Oh. So he works with you. |
| Ms. Nicholson: | Um-hmm. |
| [Defense counsel]: | And he worked where? |
| Ms. Nicholson: | At the sheriff's office. |
| [Defense counsel]: | That's all I have for now. |

The following bench conference then occurred:

| [Prosecutor]: | Now they certainly know where he works and what he did, and I'm – I'm worried. I was not until that was . . . |
| [Defense counsel]: | I think – |
| [Prosecutor]: | Purposely, I guess – I don't know. Whatever. |
| [Defense counsel]: | I don't think that's it. I think the issue is whether or not they would know, have reason to know, after his comments, that he worked for the sheriff's department. |
| THE COURT: | Oh, they – they do now. |
| [Defense counsel]: | Well, I think she would have said something, Your Honor. She was – she'd already said – |
| THE COURT: | You knew where she worked. You didn't have to ask her. |
| [Defense counsel]: | But so did they, Your Honor. |
| THE COURT: | You didn't have to ask her. |
| [Defense counsel]: | I had to ask them if they knew other jurors. |
| THE COURT: | No, you didn't have to. You knew she did and then you went a step further and asked her where she |

works.  And you know from your list exactly where she works.

[Defense counsel]:  Your Honor, I think they do too.

[Prosecutor]:  Well, they certainly do now.

THE COURT:  Well, I think that's brought on by the Defense.  I'm not going to do anything about it.

Following Ms. Nicholson's response to defense counsel's question, in which she stated that she worked with Mr. Lee at the sheriff's department, defense counsel did not renew the motion for mistrial.  Ordinarily, a defendant is not entitled to relief for an error he caused or failed to prevent.  *See* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."); *State v. Jones*, 733 S.W.2d 517, 522 (Tenn. Crim. App. 1987).

Unless there is evidence the jury which heard the case was prejudiced or biased due to comments made by a prospective juror during voir dire, such comments are not grounds for a mistrial.  *State v. Brown*, 795 S.W.2d 689, 696 (Tenn. Crim. App. 1990).  Here, there was no evidence presented that the statements of Mr. Lee or Ms. Nicholson prejudiced the jury against Defendant.  We cannot conclude that the trial court abused its discretion by failing to grant a mistrial.  Furthermore, defense counsel solicited information that Mr. Lee was employed by the sheriff's department, defense counsel did not renew the motion for mistrial, and defense counsel did not request a curative instruction.  Defendant is not entitled to relief on this issue.

Based on the foregoing, we affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, JUDGE

-11-