# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### MAY SESSION, 1999

FILED

July 21, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 02C01-9707-CC-00265 |
| | ) | |
| Appellee, | ) | |
| | ) | FAYETTE COUNTY |
| V. | ) | |
| | ) | |
| | ) | HON. JON KERRY BLACKWOOD, |
| COREY LEMONT POWELL, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (FIRST DEGREE MURDER) |

FOR THE APPELLANT:                    FOR THE APPELLEE:

**MICHAEL E. SCHOLL**                    **JOHN KNOX WALKUP**
200 Jefferson Avenue, Suite 202      Attorney General & Reporter
Memphis, TN  38103

                                     **R. STEPHEN JOBE**
                                     Assistant Attorney General
                                     2nd Floor, Cordell Hull Building
                                     425 Fifth Avenue North
                                     Nashville, TN  37243

                                     **ELIZABETH T. RICE**
                                     District Attorney General

                                     **CHRISTOPHER MARSHBURN**
                                     Assistant District Attorney General
                                     302 Market Street
                                     Somerville, TN  38068

OPINION FILED _____

REVERSED AND REMANDED

THOMAS T. WOODALL, JUDGE

# OPINION

In this case, the Defendant, Corey Lemont Powell, appeals as of right from the judgments of conviction for felony murder and especially aggravated robbery. Indicted and tried for felony murder, premeditated first degree murder, and especially aggravated robbery, the jury, on these counts, found him guilty of felony murder, second degree murder, and especially aggravated robbery. The trial court merged the second degree murder conviction with the felony murder and Defendant was given a life sentence. The trial court sentenced him to serve fifteen (15) years for the conviction of especially aggravated robbery, concurrent to the sentence of life imprisonment. Defendant presents nine (9) issues for appellate review. This court initially affirmed the convictions. The Defendant then timely filed a Petition to Rehear, which was granted. The original opinion and judgment were vacated. The court ordered the trial court to make certain findings of fact regarding Defendant's issue challenging admissibility of his confession. After further briefing following the trial court's supplemental findings of fact, the case was then reargued. After review of the entire record, briefs and arguments of counsel, and applicable law, we find that suppression of Defendant's confession is required, and we therefore reverse the judgments of the trial court and remand this case for a new trial.

The issues presented by Defendant are as follows:

1) whether the trial court erred in denying Defendant's motion to suppress his statement;

2) whether the trial court erred in refusing Defendant access to the results of a polygraph test for use as evidence;

3)   whether the trial court erred by refusing to suppress evidence of the murder weapon and the ballistics test;

4)   whether the trial court erred in denying Defendant's motion regarding the striking of specific jurors and motion for a change of venue;

5)   whether the trial court erred in denying Defendant's motion for a mistrial due to admission of evidence of Defendant's arrest;

6)   whether the trial court erred in refusing to admit testimony regarding Defendant's restricted access to the telephone during police questioning;

7)   whether the trial court erred in overruling Defendant's motion for a judgment of acquittal;

8)   whether the trial court erred by refusing to charge lesser included offenses of premeditated first degree murder; and

9)   whether the trial court erred by allowing prosecutorial misconduct during the trial.


FACTS


Bessie Russell, wife of Don Russell, testified that he was the owner and operator of Russell's Grocery located in Hickory Wythe, a rural area of Fayette County. The store had been open since April 1947. In May 1994, Don Russell was seventy-four (74) years old. Russell and his wife lived next door to the store, and each morning he rose at 5:00 a.m. to open the store. He went to the store to eat his breakfast and read the paper, then returned to the house with the newspaper for her to read. The store was open from 5:00 a.m. until 5:30 p.m.

On May 27, 1994, Mrs. Russell awoke and discovered that her husband had not yet returned with the newspaper. She walked to the store and found him

lying on his back in a pool of blood. Mrs. Russell called 911, and the victim was transported by helicopter to a hospital in Memphis where he was pronounced dead. She noticed that the cigar box was missing from the store and estimated the amount of money in the box to be between $800.00 and $1200.00.

Dr. O'Brien Smith testified that he performed the autopsy of the victim. Dr. Smith reported that the victim died as a result of a near gun shot wound to the head, and he removed a .22 caliber bullet fragment from the back of the victim's brain. From his examination, Dr. Smith determined that the gun was between six (6) to twelve (12) inches from the victim's head at the time it was fired.

Bill Kelley, Sheriff of Fayette County, testified that he led the investigation of the victim's murder. After arriving at Russell's Grocery on May 27, 1994, at 6:30 a.m., Sheriff Kelley determined that a cigar box containing approximately $1200.00 had been stolen from the store and that there were no witnesses to the shooting of the victim. On June 24, 1994, Kelley interrogated a potential suspect, Jerry Coleman, but after a brief investigation, Coleman was eliminated as a suspect. The investigation, in Sheriff Kelley's words, came to a "dead end." Two years later, in April 1996, Kelley discovered that the Defendant had told some people within the community that he was responsible for the victim's murder. Also, the Defendant's nine-shot .22 caliber revolver was seized from him by police during the Mid-South Fair. After the revolver was recovered from the Memphis Police Department property room, both the revolver and bullet fragments from the victim's brain were sent for ballistics testing.

Kelley interviewed the Defendant for the first time on May 1, 1996, advising him that he was investigating the victim's death and that they had recovered the Defendant's pistol. After reading Defendant his constitutional rights, the Defendant signed a waiver of these rights and did not request an attorney or his parents to be present during the interview. Defendant denied any involvement in either the robbery or murder of the victim, but did advise Kelley that Bryant Powell and Erin Luckett were involved. The Defendant was released following that interview. After further investigation, the Defendant was again picked up by the police for questioning and was incarcerated on May 3, 1996. After advising Defendant of his rights for a second time, Kelley again interviewed the Defendant, but not until May 6, 1996. Defendant again denied his involvement in the crime.

On May 7, 1996, Sheriff Kelley was notified that the Defendant wanted to speak with him. After Defendant was advised of his constitutional rights and signed a waiver form, he again denied involvement in the murder and implicated his cousin, "Big John," from Memphis. On May 8, 1996, Agent Scott Walley from the Tennessee Bureau of Investigation came to interview the Defendant upon Sheriff Kelley's request. Sheriff Kelley verified that the Defendant was never mistreated or promised anything in exchange for his statement. Kelley also stated that he was never informed by either the Defendant or his parents that they wanted or had retained an attorney, although Kelley spoke with Defendant's parents several times throughout the investigation.

Agent Walley testified that he advised Defendant of his constitutional rights. During the first portion of the interview, Defendant denied involvement in the

crime. Following a lunch break, Defendant returned to the interview and gave a statement to Agent Walley in which he admitted robbing and shooting the victim. Defendant stated that he entered Russell's Grocery at approximately 5:30 a.m. on May 27, 1994, with his nine-shot .22 caliber revolver in his right front pocket. He told the victim to "give [him] the money and there won't be no [sic] problem." The victim pulled out the gold cigar box from underneath the counter, and then went to the beer cooler to get a six-pack of Miller beer as Defendant requested. While turning around with his elbows halfway up, the Defendant became frightened and pulled out his revolver which "accidentally fired."

While the Defendant's statement was not tape recorded, Agent Walley took notes and then wrote out a statement in narrative form which Defendant read and signed after initialing all corrections. Sheriff Kelley returned to the room and read the statement. When Defendant affirmed that this was indeed his statement, Kelley signed the statement as a witness.

Steve Scott, an agent of the Tennessee Bureau of Investigation, administered the ballistics testing on the pistol and the bullet fragment. While Scott was unable to determine that the bullet fragments were fired from the Defendant's pistol due to damage, Scott testified that all four class characteristics of the bullet and the pistol were a match. These four class characteristics included the caliber of the gun and bullet, the direction of the barrel twist, the number of lands and grooves, and the width of the lands and grooves. While the Defendant's weapon could not be isolated as the murder weapon, it could "certainly" have been the weapon used. Agent Scott also noted that the pistol required trigger pressure

"between normal and heavy" to fire the weapon, dependent upon whether the weapon was cocked or uncocked when it was fired.

The State then rested its case-in-chief.

Tim Adams, a friend of the Defendant's, testified that after the victim's murder, the Defendant left town for one or two weeks. When the Defendant returned, he had both new tires and a new vinyl top on his car. Jokingly, Adams inquired whether the Defendant had "bumped old Donn off," but the Defendant only laughed in response.

Jesse James Jones testified that he was incarcerated in a cell facing that of Defendant's. Jones made several telephone calls for the Defendant because the telephone in Defendant's cell was not working.

Rodney Johnson testified that the Defendant never told him that he robbed or murdered the victim. Johnson did verify that Defendant owned a .22 pistol.

Stevison Veasey, the Defendant's stepfather, testified that Defendant visited his mother around May 27, 1994. During that visit, Veasey bought new tires for Defendant's car. During that same visit, Veasey stated that Defendant's natural father put a new vinyl roof on the Defendant's car.

MOTION TO SUPPRESS STATEMENT

Defendant argues that his statement given to the police on his fifth day of incarceration should have been suppressed as a violation of his Fourth, Fifth and Sixth Amendment rights under the United States Constitution. When an accused is afforded an evidentiary hearing on the merits of a motion to suppress, the findings of fact made by the trial court are binding upon the appellate court unless the evidence contained in the record preponderates against these findings. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). "Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." Id. Provided that the greater weight of the evidence supports the trial court's findings, then those findings shall be upheld by the appellate court and the party prevailing in the trial court is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. Id. In evaluating the correctness of the trial court's ruling on Defendant's pretrial motion to suppress, this court may consider the proof adduced both at the suppression hearing and at trial. State v. Henning, 975 S.W.2d 290 (Tenn. 1998).

At the hearing on the motion to suppress, Sheriff Bill Kelley testified that he had the Defendant picked up for questioning for the first time on May 1, 1996. After the Defendant denied any involvement in the crime and implicated others, he was released and further investigation occurred. In its supplemental findings of fact, the trial court determined that Defendant was incarcerated on May 3, 1996. The record reflects, however, that Defendant was not questioned again until May 6, 1996,

when he again denied any involvement in the robbery or murder of the victim. Regarding Defendant's May 6 denials, Sheriff Kelley testified "I know that he [Defendant] was blowing hot air at me again and I just took the notes and <u>then I locked him back up</u>." (Emphasis added).

We note the chronology of events that Defendant was apprehended on May 1 and released after denying involvement in the crimes. Two days later he was again taken into custody, but this time he was incarcerated for three (3) days before being questioned on May 6, when he again denied his participation in criminal acts. He was promptly "locked up" again. There had been no judicial determination of probable cause that Defendant had committed the crimes. As set forth above, Defendant confessed on May 8, 1996. No judicial determination of probable cause to arrest Defendant was made until <u>after</u> the May 8 confession.

First, we will address the Defendant's contention that his confession was obtained in violation of his Sixth Amendment right to counsel. The Sixth Amendment right to counsel does not attach until the adversarial judicial process has begun. <u>Michigan v. Jackson</u>, 475 U.S. 625, 629, 106 S.Ct. 1404, 1407, 89 L.Ed.2d 631 (1986) (citations omitted); <u>State v. Stephenson</u>, 878 S.W.2d 530, 547 (Tenn. 1994). The long-established law in Tennessee for the initiation of the adversarial judicial process is at the time of the filing of the formal charge, such as an arrest warrant, indictment, presentment, or preliminary hearing in cases where a warrant was not obtained prior to the arrest. <u>State v. Mitchell</u>, 593 S.W.2d 280, 286 (Tenn. 1980), <u>cert</u>. <u>denied</u>, 449 U.S. 845 (1980); <u>State v. Butler</u>, 795 S.W.2d 680, 685 (Tenn. Crim. App. 1990). It is clear from the record that Defendant had not been

formally charged at the time he gave his statement. Therefore Defendant's right to counsel had not yet attached, so no violation of the Sixth Amendment occurred.

Defendant urges this court to suppress his statement as involuntary based upon denial of the right to counsel during police interrogation pursuant to the Fifth Amendment. If a suspect requests that counsel be present during police-initiated custodial interrogation, then police must cease questioning until counsel for that suspect is present. Miranda v. Arizona, 384 U.S. 436, 444-45, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966); Edwards v. Arizona, 451 U.S. 477, 482, 101 S.Ct. 1880, 1883, 68 L.Ed.2d 378 (1981); State v. Stephenson, 878 S.W.2d at 547-48. The Defendant waived his right to counsel verbally and/or in writing on each occasion when he was interrogated by the police. Therefore, his waiver is sufficient for the police to have assumed he did not invoke his right to counsel under the Fifth Amendment.

The Defendant asserts that at the time he gave his statement to the police he had been incarcerated for five (5) days and that this amount of time violated the Fourth Amendment right to prompt judicial determination of probable cause after a warrantless arrest. The State concedes that Defendant was detained for a period of more than forty-eight (48) hours, and that therefore, there was a violation of the Fourth Amendment. See County of Riverside v. McLaughlin, 500 U.S. 44, 56, 111 S.Ct. 1661, 1670, 114 L.Ed.2d 49, 63 (1991); State v. Huddleston, 924 S.W.2d 666, 671-73 (Tenn. 1996). In Huddleston, our state supreme court determined that the "fruit of the poisonous tree" analysis is to be applied to determine whether a statement obtained in violation of the Fourth Amendment must

be suppressed.  Huddleston, 924 S.W.2d at 674.  The question is "whether [the statement] 'was sufficiently an act of free will to purge the primary taint of the unlawful invasion.'" Brown v. Illinois, 422 U.S. 590, 598, 95 S.Ct. 2254, 2259, 45 L.Ed.2d 416 (1975) (quoting Wong Sun v. United States, 371 U.S. 471, 486, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963)).  As stated by the court in Huddleston, "[u]nder the 'fruit of the poisonous tree' analysis, the focus is on whether the evidence was obtained by exploitation of the Fourth Amendment illegality." Huddleston, 924 S.W.2d at 674, (emphasis added) (citing Wong Sun v. United States, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963)).

In Huddleston, the supreme court noted that four (4) factors are to be considered in determining whether the confession was sufficiently an act of free will to purge the primary taint of the incarceration of a defendant without a judicial determination of probable cause.  These factors are:

1)  the presence or absence of Miranda warnings;

2)  the temporal proximity of the arrest and the confession;

3)  the presence of intervening circumstances; and

4)  the purpose and flagrancy of the official misconduct.

Huddleston, 924 S.W.2d at 674-75.  The court in Huddleston noted that the fourth factor, the purpose and flagrancy of the official misconduct, was of particular significance in this analysis.  Id. at 676.

In its supplemental findings of fact, the trial court found that Defendant was administered his Miranda warnings on May 1, May 6, May 7, and May 8.  The

-11-

record supports this finding, and this weighs against suppression of the confession. Defendant was taken into custody without a warrant having been issued, on May 3, 1996, and five (5) days later, still without an intervening judicial determination of probable cause, gave a confession while incarcerated. The defendant in Huddleston was held without a judicial determination of probable cause for 72 hours, while Defendant in this case was held 120 hours. Huddleston, 924 S.W.2d at 675. As noted in Huddleston, once a detention becomes unlawful, the increased passage of time makes the Fourth Amendment violation worse. Id. at 675. As stated by the supreme court, "[o]nce the detention becomes unlawful, the pressure to confess likely increases with each moment of continuing illegal detention." Id. In Huddleston, the supreme court held that where the detention was for approximately 72 hours, the "temporal proximity factor" weighed in favor of suppression of the statement. Likewise, in this case, where the Defendant was detained for approximately 120 hours, this factor weighs in favor of suppression.

The trial court, in its supplemental findings, determined that Defendant's parents were allowed to visit with him prior to his confession on May 8. This fact was disputed by Defendant in the trial court and on appeal. However, under the appropriate standards of review, we agree with the finding of the trial court on this factor. This would weigh in favor of denying the motion to suppress the statement.

The fourth factor, and the one which the supreme court has placed the most significance upon, weighs heavily in favor of suppression.

The Defendant was not questioned for the first approximately 72 hours that he was incarcerated. When he was finally questioned, he again denied involvement in the crimes. With no additional evidence of probable cause, and still no judicial determination of probable cause for the arrest, the Sheriff "locked [Defendant] back up" because he "knew that [Defendant] was blowing hot air . . . again . . . ."

When reviewing these facts, as we are required to do in light of Huddleston, and considering that the "focus" is on whether the evidence was obtained by exploitation of the Fourth Amendment illegality, id. at 674, the second and fourth factors outweigh the two factors which favor admissibility of the confession. Therefore, the confession given by Defendant on May 8, 1996, to Scott Walley and Sheriff Kelley must be suppressed. Accordingly, the judgments of conviction are reversed and this matter is remanded for a new trial.

Defendant also argues on appeal that the confession should have been suppressed as being in violation of Rule 5 of the Tennessee Rules of Criminal Procedure. Rule 5(a) states that a person arrested without a warrant must be taken without unnecessary delay before the nearest appropriate magistrate. The State concedes that the detention of the Defendant violated the rule. However, under Huddleston, the test for the violation of this statutory rather than constitutional right is the voluntariness of the confession under the totality of the circumstances. Huddleston, 924 S.W.2d at 670. Under similar circumstances as found by the court in Huddleston, we determine that the confession in this case should not be

suppressed solely under Rule 5 of the Tennessee Rules of Criminal Procedure, even though it must be suppressed under Fourth Amendment constitutional provisions.

Although we have determined that this case must be reversed and remanded upon the issue regarding Defendant's confession, we will address the remaining issues presented by Defendant.

POLYGRAPH EXAMINATION

Defendant contends that he should have been allowed access to the results of his polygraph examination and should have been allowed to present the results as evidence. At the suppression hearing, Agent Walley testified that the results indicated that Defendant was "deceptive" as to his involvement in the crimes committed against the victim. Therefore, Defendant was allowed access to the results of the examination.

Well-established law in Tennessee holds that the results of a polygraph examination are not admissible as evidence. State v. Hart, 911 S.W.2d 371, 377 (Tenn. Crim. App. 1995); State v. Irick, 762 S.W.2d 121, 127 (Tenn. 1988), cert. denied, 489 U.S. 1072, 109 S.Ct. 1357, 103 L.Ed.2d 825 (1989); State v. Adkins, 710 S.W.2d 525, 529 (Tenn. Crim. App. 1985); Grant v. State, 213 Tenn. 440, 443, 374 S.W.2d 391, 392 (1964). As the State correctly notes within its brief, neither the offer to take a polygraph nor the circumstances surrounding the exam are admissible as evidence. Adkins, 710 S.W.2d at 528-29; Grant, 374 S.W.2d at 392. This issue is without merit.

Defendant argues that the trial court erred in admitting a revolver and ballistic test results into evidence. Defendant asserts that the revolver was inadmissible since his prior criminal record had been expunged. Furthermore, the Defendant urges this court that the ballistics test results were so inconclusive as to be rendered neither relevant nor probative, but highly prejudicial.

During September 1994 at the Mid-South Fair in Memphis, Tennessee, Defendant was arrested for carrying a loaded .22 caliber revolver. After pleading guilty to charges of carrying a weapon on recreational property, Defendant was placed on judicial diversion. Evidently, Defendant completed his sentence of diversion without further incident and his record was expunged.

Expungement pursuant to judicial diversion includes "all recordation relating to the person's arrest, indictment or information, trial, finding of guilty and dismissal and discharge. . . ." Tenn. Code Ann. § 40-35-313(b). This statute's purpose is to restore the defendant to the status the person occupied prior to such arrest, indictment or information. Defendant maintains that physical evidence is inadmissible under the judicial diversion statute. There is no authority to support his argument. The purpose of expunging records of a criminal charge is to place the person back in the position he or she occupied prior to being arrested or charged. State v. Sims, 746 S.W.2d 191, 199 (Tenn. 1988). While the trial court did allow use of the revolver as admissible physical evidence, he refused to allow admission of any facts surrounding Defendant's prior arrest. The expungement language in our

judicial diversion statute precludes use of proof of any arrest, indictment, information, or trial. State v. Dishman, 915 S.W.2d 458, 464 (Tenn. Crim. App. 1995). Physical evidence is not excluded under this statutory section, and this issue is without merit.

Defendant complains the ballistic test results should have been suppressed as they were "inconclusive" and, although relevant, their probative value was substantially outweighed by the danger of unfair prejudice. The decision to admit or exclude evidence rests in the sound discretion of the trial court, and this court will not overturn the trial court's rulings absent a clear showing of abuse of discretion. State v. Bigbee, 885 S.W.2d 797, 806 (Tenn. 1994). While the officer who conducted the ballistics tests admitted the test results were not conclusive, he testified that the weapon could not be excluded as the potential murder weapon. The officer also stated that the four class characteristics of the Defendant's weapon matched the bullet which killed the victim. The revolver and the murder weapon had matching calibers, same number of land and grooves, matching land and groove widths, and the same direction of barrel twists. These test results are relevant, and the probative value clearly outweighs the potential prejudicial effect of the inconclusive nature of the results.

BATSON CHALLENGE AND CHANGE OF VENUE

Defendant argues that the State's exclusion of certain black jurors was in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69

-16-

(1986). Following the conclusion of voir dire, the State exercised its peremptory challenges against four (4) jurors, specifically jurors Rivers, Howell, Woods and Bryant. Defendant objected under Batson that such challenges were based upon willful and purposeful discrimination by the State. While the Defendant argued that these challenges resulted in all blacks being excluded from the jury, the State responded, "[I]t's been an unfortunate coincidence that most everybody that knows the defendant or his family is African-American, but that's a sociological fact that the State can't be prejudiced by. . . ."

After Defendant objected, the State responded to each challenge with an individual explanation for the peremptory challenge. First, with regard to juror Rivers, the State cited the fact that he had been through the criminal courts before and worked with individuals similarly situated to the Defendant on a daily basis. The State referenced the challenge to juror Howell due to her relationship with the Defendant and his family, and that, in response to questioning, some of her answers "gave her some pause about her judgment in this case." Juror Woods was excluded by the State as he has a son the same age as the Defendant and is friends with the Defendant. Juror Bryant had two family members convicted of felony offenses in Fayette County.

There is a three-step analysis defined in Batson which is used to determine whether purposeful discrimination has occurred in jury selection. Batson, 476 U.S. at 96-98. First, the opponent of the peremptory challenge must establish a prima facie case of racial discrimination. Second, the one exercising the challenge must present a race-neutral explanation for exercising the challenge. Third, the trial

court is to determine whether the reasons given are sufficient or are pretexts for discrimination.

In <u>Woodson v. Porter Brown Limestone Company, Inc.</u>, 916 S.W.2d 896, 904 (Tenn. 1996), our supreme court held that in accomplishing the mandate of <u>Batson</u>, the trial court should state clearly on the record, outside the jury's presence, the facts relied upon for finding the presence or absence of a prima facie showing. If the trial court finds that a prima facie showing has been made, then the party seeking to exclude the juror must have an opportunity to offer neutral and nondiscriminatory explanations for the exercise of the challenge. "Thereafter, the judge must determine, based on all the evidence, whether purposeful discrimination has been established." <u>Id</u>. at 904. While the procedure used by the trial court did not explicitly follow these guidelines, we must conclude that the trial judge determined first that a prima facie case of discrimination was established and, second, that the trial judge rejected Defendant's objection by concluding that there was no purposeful discrimination by the State. <u>Id</u>. at 905. While the trial court did not specifically state within the record the reasons for each finding, the record of voir dire supports the trial court's ruling as to Defendant's <u>Batson</u> objection. Upon review of the record, we will not set aside the rulings of the trial court as they are not clearly erroneous. <u>See</u> <u>Woodson</u>, 916 S.W.2d at 906 (citations omitted).

After Defendant made a contemporaneous motion for a change of venue during his voir dire challenges, the trial court overruled his motion. Defendant objected on the basis of the prosecutor's statement that most every African-American in the potential jury pool knew the Defendant. Rule 21(a) of the Tennessee Rules of Criminal Procedure provides for a change of venue "if it appears

-18-

to the court that, due to undue excitement against the defendant in the county where the offense was committed or any other cause, a fair trial probably could not be had." The decision to change venue rests in the sound discretion of the trial court and will not be overturned absent a clear abuse of discretion. Rippy v State, 550 S.W.2d 636, 638 (Tenn. 1977); State v. Melson, 638 S.W.2d 342, 360 (Tenn. 1982).

In order to reverse a defendant's conviction due to the denial of his motion to change venue, the defendant must establish that the jurors empaneled to hear his case were prejudiced or biased against him. State v. Burton, 751 S.W.2d 440, 451 (Tenn. Crim. App. 1988); State v. Evans, 838 S.W.2d 185, 192 (Tenn. 1992), cert. denied, 114 S.Ct. 740 (1993). There is no evidence in the record that undue excitement or any other cause threatened his right to a fair trial in that county. The mere fact that there was extensive knowledge of the crimes and the defendant is not sufficient to render the trial constitutionally unfair. State v. Kyger, 787 S.W.2d 13, 19 (Tenn. Crim. App. 1989) (citation omitted). Absent any proof by this Defendant that the jurors were prejudiced against him, we find this issue to be without merit.

MOTION FOR MISTRIAL

Defendant argues that the trial court erred in overruling his motion for a mistrial based upon the prosecutor's reference to Defendant's expunged conviction during the trial. During pretrial motions, the trial court determined that Defendant's prior arrest had been properly expunged and, therefore, the prosecution could not "go into the underlying circumstances of any crimes [the Defendant] would have committed while he had the gun or any charges against him." Defendant claims that

the prosecution did present testimony of and reference these inadmissible matters.

A mistrial is an appropriate remedy when a trial cannot continue, or a miscarriage of justice would result if it did.  State v. McPherson, 882 S.W.2d 365, 370 (Tenn. Crim. App. 1994).  The decision to grant a mistrial rests in the sound discretion of the trial court, and this court will not interfere with the exercise of that discretion absent clear abuse appearing on the face of the record.  State v. Jones, 733 S.W.2d 517, 522 (Tenn. Crim. App. 1987); State v. Adkins, 786 S.W.2d 642, 644 (Tenn. 1990); McPherson, 882 S.W.2d at 370.

Clearly, the record demonstrates that the prosecutor elicited testimony regarding the pistol taken from the Defendant, but the prosecutor at no instance ever inquired into the underlying circumstances surrounding the Defendant's arrest.  As previously determined, the testimony concerning Defendant's possession of a revolver was admissible, and there is no evidence of a "manifest necessity" by which the trial court should have declared a mistrial.  See Arnold v. State, 563 S.W.2d 792, 794 (Tenn. Crim. App. 1977).

TESTIMONY OF JESSE JAMES JONES

Defendant contends that the trial court erred in excluding some portions of the testimony of Jesse James Jones, a cellmate of the Defendant.  Specifically, Defendant asserts that the trial court excluded testimony regarding the Defendant's lack of ability to use a telephone while incarcerated.  As this issue was not specifically included within the Defendant's motion for new trial, this issue is not

properly before this court and is, therefore, waived.  Tenn. R. App. P. 3(e); State v.

Clinton, 754 S.W.2d 100, 103 (Tenn. Crim. App. 1988).

JUDGMENT OF ACQUITTAL

Defendant argues that the trial court erred by failing to grant a motion

for a directed verdict and judgment of acquittal following the conclusion of the State's

proof and at the end of the trial.  The duty of the trial judge and the reviewing court

on the determination of a motion for a judgment of acquittal is the same as for a

motion for a directed verdict.  State v. Torrey, 880 S.W.2d 710, 712 (Tenn. Crim.

App. 1993).  This duty is as follows:

> The rule for determining a motion for a directed verdict requires the trial
> judge and the reviewing court on appeal to look at all of the evidence,
> to take the strongest legitimate view of it in favor of the opponent of the
> motion, and to allow all reasonable inferences from it in its favor; to
> discard all countervailing evidence, and if then, there is any dispute as
> to any material determinative evidence, or any doubt as to the
> conclusion to be drawn from the whole evidence, the motion must be
> denied.

State v. Thompson, 549 S.W.2d 943, 946 (Tenn. 1977) (*citing* Jones v. State, 533
S.W.2d 326, 329 (Tenn. Crim. App. 1975)).

Defendant was convicted of murder in the perpetration of robbery and

second degree murder, which the trial court merged as one conviction for felony

murder.  At the time of this offense, a reckless killing of another committed in the

perpetration of or attempt to perpetrate any robbery or burglary constituted first

degree murder.  Tenn. Code Ann. § 39-13-202(a)(2).  He was also convicted of

especially aggravated robbery.  Especially aggravated robbery is the intentional or

knowing theft of property from another person accomplished by a deadly weapon

and the victim suffers serious bodily injury. Tenn. Code Ann. §§ 39-13-401 and -403.

From the record, it is clear that the evidence is sufficient to support the trial court's refusal to grant these motions. While Defendant focuses upon the element of "premeditation" in his brief, this mental state was not required by these offenses and his argument is moot. In his own statement, Defendant admitted to intentionally using a revolver to rob the victim of his store earnings. We note that all evidence admitted at the trial, even if admitted erroneously, can be considered when addressing a Defendant's challenge to the sufficiency of the evidence to sustain the conviction. See Lockhart v. Nelson, 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988); State v. Longstreet, 619 S.W.2d 97, 100-01 (Tenn. 1981). While the Defendant claims to have accidentally fired the handgun, evidence demonstrated that it would take a significant amount of pressure to discharge the weapon. In any event, the reckless use of the weapon resulting in the death of the victim while Defendant committed a robbery is sufficient to constitute convictions of felony murder and especially aggravated robbery.

LESSER INCLUDED OFFENSES

While we are addressing each of the issues raised by Defendant, despite the fact that we have reversed the convictions based upon his first issue, we note that if the case is retried, any issue regarding the charging of lesser included offenses must be based upon the record presented in the new trial.

Defendant argues that the trial court erred in refusing to charge the jury with the lesser offenses of premeditated first degree murder, including voluntary manslaughter and criminally negligent homicide. Reasoning that there was not adequate evidence of passion or provocation, the trial court refused to charge the jury on these lesser offenses. The trial court charged second degree murder as a lesser offense of premeditated first degree murder and charged reckless homicide as a lesser offense of felony murder.

We note that the Defendant failed to include this issue in his motion for a new trial. Tennessee Rule of Appellate Procedure 3(e) requires that issues in a motion for new trial be "specifically stated . . . otherwise such issues will be treated as waived." We do have the authority to address the trial court's failure to charge the jury on appropriate lesser offenses as plain error. Tenn. R. Crim. P. 52(b). However, for the reasons stated hereafter, we find no plain error.

The Defendant was convicted by the jury of second degree murder, felony murder and especially aggravated robbery. The trial court merged the offense of second degree murder into the conviction for murder in the perpetration of a felony. Likewise, even if the jury had been charged with voluntary manslaughter and criminally negligent homicide and had delivered a guilty verdict on each of those counts, both voluntary manslaughter and criminally negligent homicide convictions would have been merged by the trial court into the conviction for felony murder. The result would have been the same as Defendant's current conviction for felony murder. Therefore, any error in failing to charge these offenses is harmless. Tenn. R. App. P. 36(b); Tenn. R. Crim. P. 52(a).

PROSECUTORIAL MISCONDUCT

Defendant asserts in his brief that the State's prosecutor conducted himself inappropriately throughout the trial by failing to comply with discovery, impermissibly communicating with a witness during trial recess, and noting Defendant's expunged conviction during the trial. Defendant's motion for new trial specifically asserts that the trial court erred "in allowing the State to argue during the sentencing phase, matter which was outside the scope of the aggravating factors presented by the State." There is no mention in his motion for new trial of any communication by the prosecutor with a witness during the trial or of any failure by the State to comply with discovery. During the Defendant's hearing on the motion for new trial, his counsel orally requested that the portion of his motion referencing the "sentencing phase" of the trial be struck as the Defendant received the minimum sentence with regards to all counts. As the Defendant's remaining assertions of prosecutorial misconduct were not specifically included within his motion for new trial, this issue is not properly before this court and is, therefore, waived. Tenn. R. App. P. 3(e); State v. Clinton, 754 S.W.2d 100, 103 (Tenn. Crim. App. 1988).

CONCLUSION

For the reasons stated in this opinion addressing Defendant's issue on the motion to suppress, the judgments of conviction for felony murder and especially aggravated robbery are reversed. Reversal of the judgments also negates the

merger of the second degree murder conviction into the felony murder conviction. By return of a verdict of guilty of second degree murder, the jury acquitted the Defendant of the greater offense of premeditated first degree murder in that count of the indictment. Accordingly, this case is remanded for a new trial on the charges of one count of felony murder, one count of second degree murder, and one count of especially aggravated robbery.

_____
THOMAS T. WOODALL, Judge

CONCUR:

_____
JOHN H. PEAY, Judge

_____
JOE G. RILEY, JR., Judge