IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 14, 2021

**STATE OF TENNESSEE v. TREADENCE LEE HOWARD**

**Appeal from the Circuit Court for Giles County**
**Nos. 14412, 14504   Stella L. Hargrove, Judge**

———————————————————

**No. M2020-01053-CCA-R3-CD**

———————————————————

Defendant, Treadence Lee Howard, pled guilty to possession of 0.5 grams or more of cocaine with the intent to sell and was sentenced to nine years, suspended to supervised probation after service of one year in confinement. Following a hearing on a probation violation warrant based on Defendant's arrest for attempted first-degree murder, reckless endangerment, and being a felon in possession of a firearm, the trial court revoked Defendant's probation and ordered him to serve the remainder of the nine-year sentence in confinement. On appeal, Defendant argues that the trial court abused its discretion in fully revoking his probation. In a separate case, Defendant was found guilty following a jury trial of facilitation of the sale of cocaine in an amount of 0.5 grams or more within 1,000 feet of a park and was sentenced as a Range II offender to eight years and six months in the Tennessee Department of Correction, to be served consecutively. Defendant argues that the trial court erred in admitting the guilty plea of a co-defendant at trial and that the evidence was insufficient to support his conviction. Following our review of the entire record and the briefs of the parties, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JILL BARTEE AYERS J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and NORMA MCGEE OGLE, J., joined.

Brandon E. White (on appeal), Columbia, Tennessee, Hershell D. Koger (at trial), Pulaski, Tennessee, and Marilyn J. Holt (at trial), Pulaski, Tennessee, for the appellant, Treadence Lee Howard.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Assistant Attorney General; Brent Cooper, District Attorney General; and Rebecca Sue Parsons, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

# Factual and Procedural Background

*Case Number 14412*

In Giles County Circuit Court Case Number 14412, Defendant was charged with possession of 0.5 grams or more of cocaine with intent to sell, a Class B felony. On April 9, 2019, Defendant pled guilty as charged in exchange for a nine-year sentence as a Range I offender, suspended to supervised probation after service of one year in confinement, a $2,000.00 fine, and court costs. On June 9, 2020, Defendant's probation officer, Cile Counce ("Officer Counce"), filed a probation violation report against Defendant, alleging that Defendant violated the terms of his probation by virtue of his arrest for attempted first-degree murder, reckless endangerment, and being a felon in possession of a firearm, and a warrant was issued.

At the probation revocation hearing, Investigator Gerrod Shirey ("Investigator Shirey") of the Pulaski Police Department testified that on May 9, 2020, he investigated a shooting incident in Pulaski, Tennessee. As part of his investigation, Investigator Shirey located nineteen spent shell casings approximately fifty yards from a residence at the intersection of Childers Street and East Grigsby Street. He testified that one of the casings was a 7.62 shell casing consistent with an AK-47 style assault rifle, and the rest were .223 shell casings consistent with an AR-15 style assault rifle. Investigator Shirey also testified that there were numerous bullet holes within the residence where the shooting incident occurred.

During his investigation into the shooting, Investigator Shirey determined that "a silver or gray car" was involved, and he located a vehicle matching that description at 408 Pine Street in Pulaski, Tennessee. Kirsten Risner and Delissa Spivy owned the Pine Street residence and maintained a surveillance system for their property. Investigator Shirey obtained a copy of the surveillance footage which showed a silver car pulling into the driveway earlier that day on May 9, 2020. When the vehicle came to a stop, a man later identified as Key McDonald exited the driver's seat of the vehicle. Defendant exited the front passenger seat of the vehicle. Both men walked to the rear of the vehicle and bent over to look at the bumper of the vehicle which contained a bullet hole. The investigation also revealed a bullet hole in the windshield of the vehicle.

K.T.[1], who was fourteen years old at the time, testified that he was at his house on May 9, 2020, for a cookout. Approximately ten people were present at the home, including Defendant. Defendant was arguing with Keiron Nelson. At some point, Defendant left the cookout. K.T. testified that he eventually observed Defendant return in a silver car. Defendant and Mr. Nelson continued arguing, and K.T. observed that both men were holding guns. K.T. heard "a lot" of gunshots then retreated into his residence with his grandmother.

Defendant did not put on any proof at the revocation hearing. The trial court found that each ground for revocation was established and fully revoked Defendant's nine-year sentence and ordered him to serve the remainder of the sentence in confinement.

*Case Number 14504*

In Giles County Circuit Court Case Number 14504, Defendant was charged with selling cocaine in an amount of 0.5 grams or more within 1,000 feet of a park. On January 24, 2020, the State filed a notice of intent to seek enhanced punishment and corresponding notice pursuant to Rule 609 of the Tennessee Rules of Evidence to impeach Defendant with his prior convictions should he exercise his right to testify. Following a jury trial, Defendant was found guilty of facilitating the sale of 0.5 grams or more of cocaine within 1,000 feet of a park, a Class C felony, and was sentenced as a Range II offender to serve eight years and six months in the Tennessee Department of Correction to run consecutively to his nine-year sentence.

Brandon Houston ("Mr. Houston") was charged with facilitating the same drug transaction for which Defendant stood trial. Mr. Houston had pled guilty as charged prior to Defendant's trial and testified at Defendant's trial. During its direct examination, the State asked Mr. Houston if he had pled guilty to the charge. Defendant objected arguing that it was prejudicial and "irrelevant as it proves that he pled guilty to the extent that the State is trying to link this up to facilitating the sale from [Defendant]." The State argued that Mr. Houston's guilty plea constituted "impeachment by felony conviction," and that it was relevant because "everything that happened on January 8, 2018, comes into play as far as what this . . . witness knows." The trial court overruled Defendant's objection and Mr. Houston testified that he had pled guilty to facilitation of the sale of 0.5 grams or more of cocaine with an offense date of January 3, 2018.

Mr. Houston further testified that he had contacted Defendant via Snapchat about obtaining cocaine from Defendant for Stephen Scott ("Mr. Scott"). Mr. Scott lived across

---

[1] Because it is the policy of this court to protect the identity of minors, this witness will be referenced by initials.

the street from Mr. Houston's aunt, and they "had met that way. And [they] had also served weekends together." Mr. Scott was actually a confidential informant ("C.I.") with the Pulaski Police Department. Mr. Houston testified that Defendant confirmed he was in possession of cocaine and told Mr. Houston to meet him "down in the bottom" near "South Rhodes Street."[2] At Mr. Houston's instruction, Mr. Scott met him at the local Burger King and from there, Mr. Houston "rode [with Mr. Scott] down there to the bottom" to meet Defendant. When they arrived, both Mr. Houston and Mr. Scott got out of the vehicle. According to Mr. Houston, Defendant's vehicle was "full," so he told Mr. Scott to stay outside. Someone in Defendant's vehicle thought Mr. Scott was "acting kind of funny," so Mr. Houston told Mr. Scott "to go sit in his car." Mr. Houston testified that by the time he told Mr. Scott to return to his vehicle, "he turned around and 'boom,' the drugs were in his lap."

Mr. Houston could not recall who had thrown the drugs to him, but he got out of Defendant's car, got back into Mr. Scott's car, and put the drugs in the cup holder in Mr. Scott's car. During his testimony, Mr. Houston could not recall the type of vehicle Defendant was driving or the names of the occupants of the vehicle. Mr. Houston could not recall making any statements to Mr. Scott concerning Mr. Scott's giving Mr. Houston $200.00. Mr. Houston did, however, recall telling Mr. Scott that Defendant was in the car at the time of the exchange. Because of Mr. Houston's inability to recollect specific portions of the incident in question, the State relied upon video footage of the incident to refresh Mr. Houston's recollection. Upon viewing the footage, Mr. Houston confirmed that he asked Mr. Scott for $200.00 and that he had been in possession of the money at the time of the exchange.

Following the review of the video footage, Mr. Houston agreed that he contacted Defendant about purchasing cocaine and arranged a meeting spot but denied knowing who was in the car during the actual purchase and denied handling any money, asserting that he could not remember. Mr. Houston explained that he was not testifying voluntarily, and he wanted "no part" of the trial.

Lieutenant Joey Turner ("Lieutenant Turner") of the Pulaski Police Department supervised the narcotics investigation in question. Lieutenant Turner testified that he was an investigator for the City of Pulaski's Police Department and was part of a group that conducted surveillance on and video recorded the transaction between Defendant, Mr. Scott and Mr. Houston. From his vantage point at South Rhodes Street and Madison Street, Lieutenant Turner observed Mr. Houston and Mr. Scott entering and exiting Mr. Scott's

_____

[2] The briefs are inconsistent in that the location is sometimes referred to as "South Rose Street," however, South Rhodes Street is the correct location and is referred to accordingly in this opinion.

- 4 -

vehicle as well as Defendant's vehicle which he referred to as the "target vehicle." Lieutenant Turner admitted on cross examination that he did not directly identify Defendant as one of the two passengers he observed in the vehicle. Lieutenant Turner testified that only two individuals were in the target vehicle when the target vehicle eventually drove away. The video confirmed the presence of only two people in the vehicle.

Investigator Shirey, a narcotics investigator with the Pulaski Police Department, testified that he worked with criminal informants and high crime areas in the community. Mr. Scott was a C.I. who had worked with the Pulaski Police Department over a year and a half. Prior to the transaction on January 8, 2018, the Pulaski Police Department was "running a case" on both Quentin Coffey and Mr. Houston. When Mr. Coffey did not have narcotics, Mr. Houston reached out to the Defendant. Investigator Shirey testified that he met Mr. Scott at the police department to discuss a plan for the exchange in Defendant's case. The standard protocol for confidential informants was followed according to Investigator Shirey, including thoroughly searching Mr. Scott and his vehicle and setting up the camera system and recording devices to monitor the transaction. In this case, Mr. Scott was paid $100.00 for his work as a C.I. Investigator Shirey gave Mr. Scott $230.00 to pay for the narcotics.

Investigator Shirey testified that following the exchange with Defendant, he observed Mr. Houston return to Mr. Scott's car and then observed Mr. Scott travel back to Burger King, with Investigator Shirey and Lieutenant Turner trailing behind them. Upon returning to Burger King, Mr. Houston exited Mr. Scott's vehicle, and Mr. Scott spoke into the recording to confirm that Mr. Houston had exited his vehicle, that Mr. Scott was in possession of the cocaine, and that he was returning to the police department as instructed. Investigator Shirey testified that there was nothing to indicate that the recording had stopped or malfunctioned at any point. Investigator Shirey instructed Mr. Scott to leave the cocaine and the recording device in the seat of the vehicle. Investigator Shirey then took the cocaine from the vehicle and weighed and field-tested the product, which yielded a cocaine positive result. The cocaine was then photographed, packaged, and sent to the Tennessee Bureau of Investigation ("T.B.I.") for testing. Mr. Scott was searched again and found to have nothing illegal on him.

Investigator Shirey testified that the video recorded by Mr. Scott was beneficial as to the "comings and goings" of Mr. Houston and Mr. Scott from Burger King to the meeting with Defendant, but it did not obtain the transaction between Mr. Houston and Defendant. Investigator Shirey further testified that the camera footage of Mr. Houston's exchange with Defendant, via Mr. Scott's role as a C.I., was "excellent." In the footage, Mr. Scott can be seen travelling without making any detours to "the bottoms, which to the

- 5 -

investigations, we know it's South Rhodes Street" which Investigator Shirey measured as 419 feet from Pleasant Run Park—a drug-free zone.

Mr. Scott testified that he began working as an informant on December 18, 2017, in exchange for leniency with respect to his various misdemeanor charges. On January 8, 2018, he arranged to purchase cocaine from Mr. Houston, but because Mr. Houston did not have any cocaine, Mr. Houston contacted Defendant to provide cocaine for the sale. Mr. Scott and Mr. Houston set up a time, place, price and quantity for the exchange. Prior to the exchange, Mr. Scott met with investigators, was searched, was given $230 for the purchase, was "wired up" and given a camera. He then met Mr. Houston at Burger King where Mr. Houston got into his car, and they left to go to Rhodes Street. Mr. Scott testified that he asked to purchase an "eight ball," which was 3.5 grams of cocaine. Mr. Scott and Mr. Houston pulled up in front of a truck on Rhodes Street, and both got out of Mr. Scott's vehicle and walked past the truck to a silver car. He identified Defendant as sitting in the passenger seat of the silver car. Mr. Houston got in the car and told Mr. Scott to give him the money and go back to Mr. Scott's car. Mr. Scott stood at the back of the car while Mr. Houston got into the backseat of the car. He saw Mr. Houston hand the money to Defendant over his shoulder and saw Defendant give the "stuff" to Mr. Houston. Once Mr. Scott and Mr. Houston were both back in Mr. Scott's car, Mr. Houston handed Mr. Scott the cocaine. Mr. Scott reviewed the surveillance video of the transaction and identified the parties involved and narrated what he was doing and what he observed during the transaction.

Special Agent Brandy Fisher Brown, a forensic scientist with the T.B.I., testified as an expert in forensic chemistry, specifically in the field of the identification and weight of controlled substances. Agent Brown received and tested the substance sent to her in a plastic sandwich bag and found that it tested positive for cocaine and weighed 3.28 grams.

Defendant elected not to testify or otherwise put on any proof. Following jury instructions and closing arguments, the jury found Defendant guilty of the lesser included offense of facilitating the sale of 0.5 grams or more of cocaine within 1,000 feet of a park.

At a sentencing hearing on July 30, 2020, the trial court sentenced Defendant as a Range II offender to serve eight years and six months in the Tennessee Department of Correction and ordered his sentence to run consecutively to his nine-year sentence in Giles County Circuit Court Case Number 14412. Defendant now appeals as of right the decisions in both cases, Case Numbers 14412 and 14504.

# Analysis

On appeal, Defendant first argues that the trial court abused its discretion in fully revoking his probation in Case Number 14412 and ordering him to serve the remainder of his nine-year sentence in confinement. The State argues that the trial court properly exercised its discretion when it found by a preponderance of the evidence that Defendant had violated the terms of his probation. We agree with the State.

Defendant further argues that the trial court erred in admitting Mr. Houston's guilty plea into evidence and that the evidence was insufficient to uphold his conviction in Case Number 14054. The State contends that Defendant waived his argument to the admission of Mr. Houston's guilty plea by failing to request a curative instruction, and by failing to raise the argument that Mr. Houston's guilty plea bolstered his testimony. The State also contends that the evidence was sufficient to uphold Defendant's conviction in Case Number 14054. We agree with the State that Defendant's failure to request a curative instruction constituted a waiver of his claim, but we nonetheless review for plain error. While Defendant did sufficiently raise the argument in his motion for new trial, he is not entitled to relief on this claim. We agree with the State that the evidence was sufficient to uphold the conviction.

*Full Revocation of Probation*

Defendant argues that there was a lack of proof as to who fired the first shot during the incident near the residence on Childers Street, and because of this, the trial court should have ordered a partial revocation and reinstated Defendant to probation. The State contends that the testimony of K.T. supports the allegation that Defendant fired the first shot, but even without that evidence, there was sufficient evidence to support the trial court's decision to find Defendant in violation and to fully revoke his sentence of probation. We agree with the State.

This court reviews challenges to the length, range, or manner of service of a sentence under an abuse of discretion standard with a presumption of reasonableness. *See State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). This standard also applies to probation revocation proceedings. *State v. Casey Dupra Drennon*, No. M2014-02366-CCA-R3-CD, 2015 WL 6437212 (Tenn. Crim. App., at Nashville, Oct. 23, 2015). A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party. *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010).

When a trial court finds by a preponderance of the evidence that a defendant has violated the conditions of probation, the court "shall have the right ... to revoke the probation." T.C.A. § 40-35-311(e)(1). Upon revocation, the trial court may return a defendant to probation with modified conditions as necessary, extend the period of probation by no more than two years, order a period of confinement, or order the defendant's sentence into execution as originally entered. T.C.A. §§ 40-35-308(a), (c), -310. *See State v. Hunter*, 1 S.W.3d 643, 648 (Tenn. 1999) (Before appellant could successfully his initial two-year probationary term, he repeatedly violated the conditions of his probation. The trial court had the authority to revoke probation and order service of the original sentence because appellant had failed to complete an entire probationary period at the time that the violations occurred.) Moreover, an accused who is already on probation is not entitled to a second grant of probation or another form of alternative sentencing. *State v. Jeffrey A. Warfield*, No. 01C01-9711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App., at Nashville, Feb. 10, 1999). Revocation may be based on acts committed prior to the probationary period which were unknown to the court at the time of the grant of probation. *State v. Stubblefield*, 953 S.W.2d 223, 225 (Tenn. Crim. App. 1997).

Here, Defendant contends that the trial court abused its discretion in fully revoking his probation because the proof did not establish that he fired the first shot of the shooting incident at the residence on Childers Street. Defendant alleges that the proof does not negate the viability of a self-defense theory because the proof does not definitively indicate that Defendant fired the first shot. However, Defendant does not dispute that "there are certainly grounds" for a violation of the terms of Defendant's probation.

K.T. testified that he observed both Defendant and his cousin in possession of guns. He heard his cousin arguing with Defendant, then saw his cousin disarmed. After seeing his cousin disarmed, K.T. heard the first shot. The record supports the trial court's finding that Defendant violated the terms of his probation by being in possession of a firearm, regardless of who fired the first shot. Once the trial court has found that a Defendant has violated the terms of his probation, it retains discretionary authority, pursuant to Tennessee Code Annotated section 40-35-310(b), to revoke the probation and order Defendant to serve his sentence in confinement. The determination of the proper consequence of a probation violation embodies a separate exercise of discretion. *Hunter*, 1 S.W.3d at 647. Further, an accused who has already been granted probation is not entitled to either a second grant of probation or another form of alternative sentencing. *Jeffrey A. Warfield*, 1999 WL 61065, at *2.

The record reflects the fact that Defendant was in possession of a firearm, which is a violation of the terms of his probation. It was within the trial court's discretion to fully revoke Defendant's probation. Accordingly, Defendant is not entitled to relief on this claim.

*Introduction into Evidence of Mr. Houston's Guilty Plea*

On appeal, Defendant argues that the admission at trial of Mr. Houston's guilty plea was error and a violation of the trial court's discretion because the evidence was irrelevant, unfairly prejudicial and bolstered Mr. Houston's testimony with impermissible extrinsic evidence. In response, the State argues that Defendant waived his argument that the guilty plea bolstered Mr. Houston's testimony by failing to raise it before the trial court and further that Defendant waived this argument by failing to request a curative instruction after the evidence was admitted during trial. Defendant objected to the evidence at trial. At the hearing on the motion for new trial, Defendant's argument, while sparse, could be interpreted to include a bolstering argument. However, Defendant did not request a curative jury instruction after evidence of Mr. Houston's guilty plea was entered; accordingly Defendant has waived this argument. Nonetheless, we review this issue for plain error and further conclude that the admission of Mr. Houston's guilty plea was not error for which Defendant is entitled to relief.

A party is bound by the grounds asserted when making an objection. *State v. Adkisson,* 899 S.W.2d 626, 634-635 (Tenn. Crim. App. 1994). The party cannot assert a new or different theory to support the objection in the motion for a new trial or in the appellate court. *Id.* When a party abandons the ground asserted when the objection was made and asserts completely different grounds in the motion for a new trial and in this court, the party waives the issue. *State v. Terry Norris*, No. W2000-00707-CCA-R3-CD, 2014 WL 6482823, at *12 (Tenn. Crim. App., at Jackson, Nov. 18, 2014). An appellate court will limit its decision to the ground asserted when the trial court made its ruling. *Id.* Nonetheless, we may still review the issue for plain error. *Adkisson*, 899 S.W.2d at 634-635.

"[A] defendant is not entitled to relief when he or she 'failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error.'" *State v. Debiasi Sirnard King*, No. E2002-00634-CCA-R3-CD, 2003 WL 21261775, at *4 (Tenn. Crim. App., at Knoxville, June 2, 2003) (quoting Tenn. R. App. P. 36(a)). "When a defendant fails to request a curative instruction, he waives the issue on appeal." *See State v. Trenton Jermaine Bell*, No. M2019-01810-CCA-R3-CD, 2021 WL 794771, at *6 (Tenn. Crim. App., at Nashville, Mar. 2, 2021) *perm. app. denied* (Tenn. May 13, 2021) (citing *State v. Jones,* 733 S.W.2d 517, 522 (Tenn. Crim. App. 1987)). A trial court should give a curative instruction once an objection has been made. *State v. Griffis*, 964 S.W.2d 577, 599 (Tenn. Crim. App. 1997). If the trial court fails to give a curative instruction *sua sponte,* counsel has the obligation to request the trial court to give a curative instruction. *Id.* If a party fails to request a curative instruction, or, if dissatisfied with the instruction

given and fails to request a more complete instruction, the party effectively waives the issue for appellate purposes. *Id*. "The presumption is that a jury follows the instructions of the court." *State v. Vanzant*, 659 S.W.2d 816, 819 (Tenn. Crim. App. 1983). "In order to overcome this presumption, an accused must show by clear and convincing evidence that such instruction was not followed." *Id.*; *see also State v. Cory Campbell*, No. W2005-01418-CCA-R3-CD, 2006 WL 3147050, at *6 (Tenn. Crim. App., at Jackson, Nov. 3, 2006).

This court may, in the exercise of its discretion, consider an issue which has been waived due to a procedural default, waived due to a change in legal theory, or has not been presented for review by either party. *Adkisson*, 899 S.W.2d at 636. This court may consider other issues: (1) to prevent needless litigation, (2) to prevent injury to the interests of the public, (3) to prevent prejudice to the judicial process, and (4) to prevent manifest injustice or to do substantial justice. *Id*. at 638. Before an error may be recognized pursuant to Rule 36(b) of Tennessee's Rules of Appellate Procedure, the error must be plain. Tenn. R. App. P. 36. Under plain error review, relief will only be granted when five prerequisites are met: (1) the record clearly establishes what occurred in the trial court, (2) a clear and unequivocal rule of law was breached, (3) a substantial right of the accused was adversely affected, (4) the accused did not waive the issue for tactical reasons, and (5) consideration of the error is necessary to do substantial justice. *State v. Banks*, 271 S.W.3d 90, 120 (Tenn. 2008) (*citing State v. Gomez*, 239 S.W.3d 733, 737 (Tenn. 2007)).

Questions concerning the admissibility of evidence rest within the sound discretion of the trial court, and this court will not interfere in the absence of abuse appearing on the face of the record. *State v. Plyant,* 263 S.W.3d 854, 870 (Tenn. 2008). A trial court abuses its discretion when it "applies an incorrect legal standard or reaches a conclusion that is 'illogical or unreasonable and causes an injustice to the party complaining.'" *Id.* The State is entitled to impeach its own witness. *See* Tenn. R. Evid. 607 ("[t]he credibility of a witness may be attacked by any party, including the party calling the witness . . . so long as the questioning is not a pretext for putting inadmissible hearsay before the jury."); *State v. Jones*, 15 S.W.3d 880, 891 (Tenn. Crim. App. 1999); *State v. Troy Jones*, No. M2018-00200-CCA-R3-CD, 2019 WL 2371945, at *9 (Tenn. Crim. App., at Nashville, June 5, 2019) *perm. app. denied* (Tenn. Sept. 18, 2019).

Here, Mr. Houston, a co-defendant, was charged with facilitating the same offense for which Defendant was charged. Mr. Houston testified pursuant to a subpoena and made clear that he did not wish to testify. Following Defendant's objection, the State argued in a bench conference that Mr. Houston's guilty plea was admissible as impeachment "by felony of conviction" and "absolutely relevant." The trial court overruled the objection. Throughout his testimony, Mr. Houston equivocated in his responses and admitted that he

did not want to testify or be a part of the trial. The record supports the admission of the guilty plea for impeachment purposes.

At no time before the jury was instructed did Defendant request a curative instruction regarding Mr. Houston's guilty plea, nor did he object when the standard jury instruction on impeachment was delivered to the jury. The trial court instructed the jury on impeachment evidence:

> A witness may be impeached by proving that he or she has made material statements out of court which are now at variance with the witness' testimony while on the witness stand; however, proof of any prior inconsistent statements may be considered by you only for the purpose of judging that witness' credibility, and not as substantive evidence of the truth of the matter asserted in those statements.
>
> A witness may be impeached by careful cross-examination involving the witness in contradictory, unreasonable, and improbably statement; however, immaterial discrepancies or differences in the statements of witness do not affect their credibility unless it should plainly appear that some witness willfully testifies falsely.
>
> When a witness is thus impeached, the Jury has the right to disregard his or her testimony and treat it as untrue, except where it is corroborated by other credible testimony, or by the facts and circumstances proven at this trial.

The jury received this standard instruction on impeachment despite Defendant's failure to request a curative instruction when the trial court overruled his objection. Moreover, we note that in Defendant's brief, he indicated that he intended to file a motion to supplement the record with the transcript of the jury instructions, but there is no evidence in the record that he did so. Therefore, the only jury instructions we have to consider are those written instructions contained in the technical record. The jury is presumed to have followed those instructions. *Vanzant*, 659 S.W.2d at 819. Defendant has presented no evidence that the jury disregarded the court's instruction so as to overcome the presumption. Absent evidence to overcome the presumption that the jury followed the trial court's instruction, Defendant is not entitled to argue that Mr. Houston's guilty plea influenced the jury to reach the same conclusion regarding Defendant's charge because the jury was instructed that the impeachment evidence was not substantive evidence. No clear

and unequivocal rule of law has been broken. *Banks*, 271 S.W.3d at 120. Defendant is not entitled to plain error relief.

We now turn to consider whether the court erred by admitting Mr. Houston's guilty plea at trial. Issues of admissibility fall within the discretion of the trial court and will not be overturned in the absence of abuse of such discretion. Here, Defendant's written motion for a new trial stated: "The Court erred in allowing the introduction of evidence to the jury that co-defendant Brandon Houston pled guilty to facilitation of a felony, sale of cocaine over .5 grams, in the instant case." In the hearing on the motion for new trial, trial counsel stated:

> I thought 100 percent the purpose of submitting [Mr. Houston's guilty plea] to a jury was to say, look, [Mr. Houston] pled guilty to facilitation of a sale because [Defendant] is guilty of a sale. And I think that is an improper use of bringing in somebody's conviction in that respect.

Defendant's argument could be interpreted to encompass his position that Mr. Houston's guilty plea bolstered his testimony with impermissible extrinsic evidence. We conclude that the introduction of Mr. Houston's guilty plea was a proper impeachment of a reluctant and equivocating witness and that the trial court's standard jury instruction on impeachment evidence was sufficient absent any request for any other curative instruction by Defendant. *Griffis*, 964 S.W.2d at 599. We conclude that the trial court did not abuse its discretion in admitting the evidence of Mr. Houston's guilty plea for purposes of impeachment. Accordingly, Defendant is not entitled to relief on this claim.

*Sufficiency of the Evidence*

On appeal, Defendant claims that the evidence as to his conviction for facilitating the sale of 0.5 grams or more of cocaine within 1,000 feet of a park in Case Number 14504 is insufficient. Defendant essentially launches a credibility argument against Mr. Houston and Mr. Scott implying that their testimonies were not credible enough to constitute sufficient evidence. Defendant also alleges that the lack of video evidence of Defendant's involvement in the drug transaction renders the evidence against him insufficient to convict.

It is an offense for a defendant to knowingly sell a controlled substance; or possess a controlled substance with intent to manufacture, deliver or sell the controlled substance. T.C.A. § 39-17-417(a)(3)-(4). A person is criminally responsible for the facilitation of a felony, if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under section 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." T.C.A. § 39-11-403(a).

- 12 -

When a defendant challenges the sufficiency of the evidence, this court is obliged to review that claim according to certain well-settled principles. A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). The burden is then shifted to the defendant on appeal to demonstrate why the evidence is insufficient to support the conviction. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Therefore, this Court will afford the State "the strongest legitimate view of the evidence, as well as all reasonable and legitimate inferences that may be drawn therefrom." *Id.* The relevant question the reviewing court must answer is whether *any* rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). On appeal, "the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003). As such, this court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

The credibility of witnesses is a determination for the jury. *State v. Boyd*, 797 S.W.2d 589, 593 (Tenn. 1990). This court may not reweigh or re-evaluate the credibility of witnesses. *State v. Holder*, 15 S.W.3d 905, 912 (Tenn. Crim. App. 1999).

Defendant alleges insufficiency of the evidence against him in Case Number 14504 because he contends that neither Mr. Scott nor Mr. Houston were credible witnesses. In fact, Mr. Scott and Mr. Houston were not the State's only witnesses. Lieutenant Joey Turner, Investigator Gerrod Shirey and Special Agent Brandy Fisher Brown testified regarding their investigations of the alleged drug sale. Mr. Houston testified that he contacted Defendant to purchase drugs for Mr. Scott and coordinated a plan for the sale to occur, including time, place, price and quantity. Defendant was observed to be present in the vehicle when the exchange of money for cocaine occurred. The substance obtained from Defendant's vehicle tested positive as cocaine and weighed 3.28 grams. The C.I. tasked with buying the cocaine identified Defendant in the vehicle. The C.I. followed the plan set by Defendant in his communication with Mr. Houston. The evidence establishes that Defendant substantially furnished assistance in the commission of the felony of the sale of cocaine. Viewing the proof in the light most favorable to the State and discarding all countervailing proof, a reasonable jury could conclude that Defendant facilitated the sale of 0.5 grams or more of cocaine within 1,000 feet of a park. Thus, the proof is therefore sufficient to support Defendant's conviction.

- 13 -

## Conclusion

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
JILL BARTEE AYERS, JUDGE